# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | |
|---|---|
| **CONTIGUITY, LLC,** | |
| Plaintiff, | Civil Action No. 6:23-cv-00038 |
| v. | **Jury Trial Demanded** |
| **CONDUENT BUSINESS SERVICES, LLC,** | |
| Defendant. | |

## DEFENDANT CONDUENT BUSINESS SERVICES, LLC'S
## MOTION TO DISMISS

# TABLE OF CONTENTS

I.      BACKGROUND STATEMENT OF UNCONTESTED FACTS ..................................... 1

II.     PRELIMINARY STATEMENT ................................................................... 1

III.    LEGAL STANDARDS FOR DISMISSAL UNDER RULE 12(b)(6) ............................. 2

IV.     THE '084 PATENT CLAIMS ..................................................................... 3

V.      ARGUMENT ....................................................................................... 6

        A.      The Claims of the '084 Patent Are Directed to Ineligible Subject Matter ............. 6

                1.      The '084 Patent Claims Merely Recite an Abstract Idea, and Thus
                        Fail *Mayo/Alice* Step One. ....................................................... 7

                2.      The Claims Fail to Recite an Inventive Concept, and Thus Fail Step
                        Two of the *Mayo/Alice* Test. ..................................................... 11

        B.      Contiguity's Infringement Allegations Should Be Dismissed Because They
                Are Predicated on Interpretations Not Supported Under 35 U.S.C. § 112. .......... 14

        C.      Contiguity Fails To Plead Facts That Could Support Pre-Suit Knowledge of
                the '084 Patent. ................................................................................. 20

VI.     CONCLUSION .................................................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A Pty Ltd. v. eBay, Inc.*,
No. 1-15-CV-155 RP, 2015 WL 10990118 (W.D. Tex. Oct. 8, 2015).....................................5

*Addiction and Detoxification Inst. L.L.C. v. Carpenter*,
620 F. App'x 934 (Fed. Cir. 2015) ......................................................................................20

*ALD Social, LLC v. Verkada, Inc.*,
Case No. 23-cv-00049, Dkt. No. 38 (N.D.C.A. Feb. 7, 2023) (previously
W.D.T.X. San Antonio Division Case No. 22-cv-00975-FB)...................................15, 16, 17

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
573 U.S. 208 (2014)........................................................................1, 7, 11, 12, 14

*Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*,
841 F.3d 1288 (Fed. Cir. 2016) .........................................................................................9

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).....................................................................................................2, 14

*Bancorp Servs., LLC. v. Sun Life Assur Co. of Canada (U.S.)*,
687 F.3d 1266 (Fed. Cir. 2012)......................................................................................3, 5

*Bartonfalls LLC v. Turner Broad. Sys., Inc.*,
No. 2:16-cv-1127-JRG-RSP, 2017 WL 1375205 (E.D. Tex. Mar. 15, 2017) .......................15

*Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*,
827 F.3d 1341 (Fed. Cir. 2016)......................................................................................7, 12

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).....................................................................................................2, 4

*Bilski v. Kappos*,
561 U.S. 593 (2010)..........................................................................................................2

*Bot M8 LLC v. Sony Corp. of Am.*,
4 F.4th 1342 (Fed. Cir. 2021) .....................................................................................14, 15

*Castlemorton Wireless, LLC v. Bose Corp.*,
No. 6:20-CV-00029-ADA, 2020 WL 6578418 (W.D. Tex. July 22, 2020)...........................21

*Chamberlain Grp., Inc. v. Techtronic Indus.*,
935 F.3d 1341 (Fed. Cir. 2019)......................................................................................9, 10

*Chapterhouse, LLC v. Shopify, Inc.*,
No. 2:18-CV-00300-JRG, 2018 WL 6981828 (E.D. Tex. Dec. 11, 2018) ............................19

*ChargePoint, Inc. v. SemaConnect, Inc.*,
920 F.3d 759 (Fed. Cir. 2019) ...........................................................................................9, 10

*Chhim v. Univ. of Texas at Austin*,
836 F.3d 469 (5th Cir. 2016) ..................................................................................................20

*Commil USA, LLC v. Cisco Sys., Inc.*,
135 S.Ct. 1920 (2015) ..............................................................................................................20

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*,
776 F.3d 1343 (Fed. Cir. 2014) ...............................................................................................6

*CyberFone Sys., LLC v. CNN Interactive Grp., Inc.*,
558 F. App'x 988 (Fed. Cir. 2014) ..........................................................................................5

*CyberSource Corp. v. Retail Decisions, Inc.*,
654 F.3d 1366 (Fed. Cir. 2011) ...............................................................................................9

*De La Vega v. Microsoft Corp.*,
Nos. W-19-CV-00612-ADA, W-19-CV-00617-ADA, 2020 WL 3528411
(W.D. Tex. Feb. 11, 2020) ...............................................................................................15, 19

*Dealertrack, Inc. v. Huber*,
674 F.3d 1315 (Fed. Cir. 2012) ...............................................................................................2

*Disc Disease Sols. Inc. v. VGH Sols., Inc.*,
888 F.3d 1256 (Fed. Cir. 2018) .............................................................................................15

*Electric Power Grp., LLC v. Alstom S.A.*,
830 F.3d 1350 (Fed. Cir. 2016) .................................................................................... *passim*

*Enfish LLC v. Microsoft Corp.*,
822 F.3d 1327 (Fed. Cir. 2016) ..........................................................................................7, 8

*Genetic Techs. Ltd. v. Merial L.L.C.*,
818 F.3d 1369 (Fed. Cir. 2016) ...............................................................................................7

*Gottschalk v. Benson*,
409 U.S. 63 (1972) ...............................................................................................................6, 4

*Grecia Est. Holdings LLC v. Meta Platforms, Inc.*,
No. 6:21-CV-00677-ADA, 2022 WL 2019296 (W.D. Tex. June 6, 2022) ............................20

*Intendis GMBH v. Glenmark Pharms. Inc.*,
822 F.3d 1355 (Fed. Cir. 2016) .............................................................................................15

*K-Tech Telecomms., Inc. v. Time Warner Cable, Inc.*,
    714 F.3d 1277 (Fed. Cir. 2013)...........................................................................15

*Mayo Collaborative Servs. v. Prometheus Lab'ys, Inc.*,
    132 S.Ct. 1289 (2012) ...............................................................................6, 11, 12

*Ottah v. Fiat Chrysler*,
    884 F.3d 1135 (Fed. Cir. 2018)...........................................................................15

*Parker v. Flook*,
    437 U.S. 584 (1978)..............................................................................................11

*Pierce v. Hearne Indep. Sch. Dist.*,
    600 F. App'x 194 (5th Cir. 2015) ........................................................................20

*Rapid Litig. Mgmt. Ltd. v. CellzDirect, Inc.*,
    827 F.3d 1042 (Fed. Cir. 2016).............................................................................7

*Simpleair v. Sony Ericsson Mobile Commc'ns*,
    820 F.3d 419 (Fed. Cir. 2016)..............................................................................17

*Soar Tools, LLC v. Mesquite Oil Tools, Inc.*,
    No. 5:19-CV-243-H, 2021 WL 3030066 (N.D. Tex. July 2, 2021).................15, 20

*TLI Commc'ns LLC Patent Litig.*,
    823 F.3d 607, 611-615 (Fed.  Cir. 2016) .............................................................6, 7

*Ultramercial, Inc. v. Hulu, LLC*,
    772 F.3d 709 (Fed. Cir. 2014) (Mayer, J., concurring).........................................2, 3

*Univ. of Fla. Rsch. Found., Inc. v. Gen. Elec. Co.*,
    916 F.3d 1363 (Fed. Cir. 2019).............................................................................7

**Statutes**

35 U.S.C. § 101................................................................................2, 3, 5, 6, 21

35 U.S.C. § 112................................................................................1, 14, 21

**Other Authorities**

Fed. R. Civ. P. 12..............................................................................................14

Fed. R. Civ. P. 12(b)(6)......................................................................................1, 2

## I.      BACKGROUND STATEMENT OF UNCONTESTED FACTS

Plaintiff Contiguity, LLC ("Contiguity") filed this lawsuit on January 20, 2023 accusing Defendant Conduent Business Services, LLC ("Conduent") of direct and induced infringement of "one or more claims" of the '084 Patent. *See* Dkt. No. 1 ¶¶ 11, 15. Contiguity's Complaint attaches a copy of the '084 Patent. Dkt. No. 1-1. Contiguity's Complaint also attaches a claim chart purportedly explaining why Conduent infringes the '084 Patent. Dkt. No. 1-2.

## II.     PRELIMINARY STATEMENT

Conduent moves, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the Complaint (Dkt. No. 1) for failure to state a claim upon which relief can be granted. Contiguity alleges infringement of U.S. Patent No. 8,031,084 ("the '084 Patent," Dkt. No. 1-1), which was prosecuted long before the Supreme Court's landmark patent subject matter eligibility decision in *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208 (2014). The claims of the '084 Patent are directed to the abstract idea of collecting information, analyzing it, and displaying certain results of the collection and analysis. The specification of the '084 Patent states as much: "[e]mbodiments of the present invention provide a method, system and computer program product for vehicle speed acquisition and citation." Dkt. No. 1-1 ('084 Patent) at 3:16–18. This is an abstract idea, and because there is nothing in the specification to salvage the claims from patent ineligibility, the claims are ineligible under the governing two-step eligibility framework.

Contiguity's Complaint also fails to state a claim on which relief can be granted because it fails to allege facts to support any theory of infringement where the claims, as construed, would be supported by 35 U.S.C. § 112. To even pass a red-face test, Contiguity needs this Court to bless a pleading that asserts a claim construction that cannot plausibly be supported by the specification of the '084 Patent. There is no plausible construction of the claims of the '084 Patent that would

support an allegation of infringement, so Contiguity's Complaint should be dismissed as to the merits of its infringement allegations.

Finally, Contiguity's indirect infringement claim fails. It does not plead pre-suit knowledge of the asserted patent and thus does not plead facts to support any pre-suit liability for infringement of the '084 Patent. Tellingly, the Complaint alleges that "*[a]t least since being served* by this Complaint and corresponding claim charts, Defendant has actively, knowingly, and intentionally continued to induce infringement of the '084 Patent . . ." Dkt. No. 1 ¶ 15 (emphasis added). Contiguity's claim for indirect patent infringement must be dismissed for the period before it filed the Complaint.

Conduent respectfully requests oral argument on this Motion.

## III.   LEGAL STANDARDS FOR DISMISSAL UNDER RULE 12(b)(6)

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plausibility standard is not met unless the "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Patentability under 35 U.S.C. § 101 is a threshold legal issue. *Bilski v. Kappos*, 561 U.S. 593, 602 (2010); *see also Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1333 n.3 (Fed. Cir. 2012). The § 101 inquiry is properly raised at the pleading stage if it is apparent from the face of the patent that the asserted claims are not directed to eligible subject matter. *See Ultramercial, Inc. v.*

*Hulu, LLC*, 772 F.3d 709, 718-19 (Fed. Cir. 2014) (Mayer, J., concurring). This is particularly true

where claim construction is not required to conduct a § 101 analysis. *Bancorp Servs. L.L.C. v. Sun*

*Life Assur.* Co., 687 F.3d 1266, 1273 (Fed. Cir. 2012).

## IV.   THE '084 PATENT CLAIMS

Contiguity's Complaint does not specifically identify asserted claims. *See* Dkt. No. 1 ¶ 11

("Defendant has been and continues to directly infringe **one or more claims** of the '084 Patent . .

.") (emphasis added); *see also id.* at ¶ 15. However, Contiguity attaches a claim chart to the

Complaint (Dkt. No. 1-2) that recites the language of independent claim 1 and dependent claim 4

as "Exemplary Claims". *Id.* at ¶ 11 ("the Defendant products identified in the charts incorporated

into this Count below . . . that infringe **at least the exemplary claims** of the '084 Patent also

identified in the charts incorporated into this Count below (the 'Exemplary '084 Patent Claims')

literally or by the doctrine of equivalents.") (emphasis added).

> Contiguity's Exemplary Claims are method claims that recite the following steps:
>
> Claim 1. A ***method of infraction detection*** based on vehicle traffic flow
> data, the method comprising:
>
> > ***acquiring*** first imagery of a plurality of vehicles at a first location at a
> > first time;
> >
> > ***acquiring*** second imagery of a plurality of vehicles at a second location
> > at a second time;
> >
> > ***identifying*** a first vehicle from the acquired first imagery and the
> > acquired second imagery;
> >
> > ***determining*** a speed of the first vehicle;
> >
> > ***generating*** a citation signal when the speed of the first vehicle exceeds
> > a predetermined speed; and
> >
> > ***attempting to transmit*** the citation signal to a device of a person
> > associated with the vehicle.
>
> Claim 4. The method of claim 1, wherein the citation signal includes a
> license tag of the first vehicle and a location of the vehicle.

Dkt. No. 1-1 ('084 Patent) at cls. 1, 4 (emphasis added).

The Exemplary Claims recite a "method of infraction detection" comprising a series of conventional data-processing steps which may or may not be performed using generic computer components. *Id.* at cl. 1. These steps include (1) "***acquiring*** [a] first [and second] imagery of a plurality of vehicles at a first [and second] location at a first [and second] time;" (2) "***identifying*** a first vehicle from the acquired first [and second] imagery;" (3) "***determining*** the speed of the first vehicle;" (4) "***generating*** a citation signal when the speed of the first vehicle exceeds a predetermined speed;" and (5) "***attempting to transmit*** the citation signal to a device of a person associated with the vehicle." *Id.* (emphasis added). The claimed method is focused on the abstract idea of collecting information, analyzing it, transmitting, and presenting certain results of the collection and analysis. Moreover, the analysis step merely requires performing a basic mathematical calculation to determine the speed of the vehicle (i.e., distance/time = rate). *Id.* at cl. 5 ("[T]he ***speed of the vehicle*** is determined based on a ***difference between*** the first ***time*** and the second time ***and*** a ***distance*** between the first location and the second location.").

The remaining (dependent) claims, recite various obvious limitations relating to the final step (i.e., "generating [and attempting to transmit] a citation signal"), wherein the "citation signal" includes the vehicle's "license tag" (claim 4), "location" (claim 4), "difference between the speed [] and the predetermined speed" (claim 6) and/or the "acquired first and second imagery" (claim 3); as well as wherein the "attempt[ed transmission of] the citation signal" is to "a mobile phone" (claim 7) or is "communicated to a law enforcement agency" (claims 2 and 3).

Although Contiguity's Claim Chart only identifies claims 1 and 4 as the Exemplary Claims, as explained above, the Complaint is vague as to the claims it is asserting. *See* Dkt. No. 1 ¶¶ 1, 11, 14, 15, 19(B) (Indicating that Contiguity may assert additional claims). In the event that Contiguity tries to assert independent claims other than claim 1, Conduent asserts that claim 1 is representative

of the two remaining independent claims (claims 8 and 15). Although claim 8 is an "apparatus" claim and claim 15 is a "system" claim, both claims relate to determining a speeding infraction/violation using the **same five basic steps** directed to collecting, described above, analyzing (i.e., using that information and performing the same basic "mathematical calculation,"[1] "computing a speed"), coupled with transmitting and presenting the information (i.e., "generating [and attempting to communicate] a citation signal when the speed of the first vehicle exceeds a predetermined speed"). Dkt. No. 1-1 ('084 Patent) at cls. 8, 15. The only additional claim elements recited by claims 8 and 15 include generic computer components such as "image" or "video capture devices," "memory," and "processors." *Id.* The claims that depend from independent claim 8 (claims 9–14) and independent claim 15 (claim 16), generally recite the same or similar limitations to those recited by the dependent claims of claim 1.[2]

When, as here, the only difference between claims is the form in which they are drafted, it is appropriate to treat them as "as equivalent for purposes of patent eligibility under § 101." *Bancorp Servs., LLC. v. Sun Life Assur. Co. of Canada (U.S.)*, 687 F.3d 1266, 1277 (Fed. Cir. 2012). In addition, nothing in the dependent claims provides points of difference for the representative claim analysis. *See also A Pty Ltd. v. eBay, Inc.*, No. 1-15-CV-155 RP, 2015 WL 10990118, at *3 (W.D. Tex. Oct. 8, 2015) ("[C]onclud[ing] Plaintiff has not shown [the court] lack[ed] jurisdiction to review Defendant's motion to dismiss . . . [stating w]hile Plaintiff is the master of its complaint, it cannot employ artful pleading to evade judicial review . . . [t]here is nothing in Plaintiff's complaint which indicates Plaintiff is not, and does not intend to, assert each

---

[1]  Independent claims 8 and 15 include the mathematical equation recited in claim 5.

[2]  The Federal Circuit has explained that "[t]here is no requirement that the district court engage in claim construction before deciding § 101 eligibility." *CyberFone Sys., LLC v. CNN Interactive Grp., Inc.*, 558 F. App'x 988, 992 n.1 (Fed. Cir. 2014).

and every claim of the '572 Patent.").

Since all three independent claims are "substantially similar and linked to the same abstract idea" of collecting information, analyzing it, and displaying certain results of the collection and analysis, they may be analyzed collectively under § 101. *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014).

## V.   ARGUMENT

### A.   The Claims of the '084 Patent Are Directed to Ineligible Subject Matter.

"Phenomena of nature, though just discovered, mental processes, and abstract intellectual concepts are not patentable, as they are the basic tools of scientific and technological work." *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972). To further this mandate, the Supreme Court has established a two-step analytical framework for distinguishing patents that claim patent-ineligible laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts. *Mayo Collaborative Servs. v. Prometheus Laby's, Inc.*, 132 S.Ct. 1289, 1294 (2012). First, the court must determine whether the claims at issue are directed to a patent-ineligible abstract idea. *Id.* at 1296–97. If so, the court then considers the elements of each claim both individually and "as an ordered combination" to determine whether the additional elements "transform the nature of the claim" into a patent-eligible application of that abstract idea. *Id.* at 1297–98. This is the search for an "inventive concept"—something sufficient to ensure that the claim amounts to "significantly more" than the abstract idea itself. *Id.* at 1294.

The Federal Circuit has also explained that although separate, the *Mayo/Alice* "steps are plainly related: not only do many of our opinions make clear that the two stages involve overlapping scrutiny of the content of the claims, but we have noted that there can be close questions about when the inquiry should proceed from the first stage to the second [and that] stage-

two analysis would reach [the] same conclusion as reached at stage one." *Electric Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016) (citing *TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 611–15 (Fed. Cir. 2016); *Genetic Techs. Ltd. v. Merial L.L.C.*, 818 F.3d 1369, 1375 (Fed. Cir. 2016); *Enfish LLC v. Microsoft Corp.*, 822 F.3d 1327, 1339; *Rapid Litig. Mgmt. Ltd. v. CellzDirect, Inc.*, 827 F.3d 1042, 1050–52 (Fed. Cir. 2016); *Bascom Global Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1348–49 (Fed. Cir. 2016)).

The claims of the '084 Patent are ineligible because they are directed to the abstract idea of "collecting information, analyzing it, and displaying certain results of the collection and analysis." *Electric Power*, 830 F.3d at 1353. The specification supports this conclusion: "[e]mbodiments of the present invention provide a method, system and computer program product for vehicle speed acquisition and citation." Dkt. No. 1-1 ('084 Patent) at 3:16–18; *see also id.* at 1:61–63, 2:5–6. In addition, the claimed process merely automates that which can be done manually. *Univ. of Fla. Rsch. Found., Inc. v. Gen. Elec. Co.*, 916 F.3d 1363, 1367 (Fed. Cir. 2019); *see* Dkt. No. 1-1 ('084 Patent) at 2:14–17 ("there is a need for ticketing speeding motorists . . . without requiring the presence of a police officer to actually witness the speeding."); *see also id.* at 1:65–2:3.

The claims of the '084 Patent fail *Mayo/Alice* step one and because the claims do not contain an inventive concept that amounts to "something more," they do not satisfy step two.

### 1.    The '084 Patent Claims Merely Recite an Abstract Idea, and Thus Fail *Mayo/Alice* Step One.

The Supreme Court has explained that the first stage of the *Mayo/Alice* filter is a meaningful one. *Alice*, 573 U.S. at 217–18. Specifically, "the first-stage inquiry [] look[s] at the 'focus' of the claims [and] their 'character as a whole.'" *Electric Power*, 830 F.3d at 1353 (citations omitted). At *Mayo/Alice* step one, courts should consider whether the "character as a whole" of

the claims is directed, not merely related, to an abstract idea. *Enfish*, 822 F.3d at 1335–36 (Fed. Cir. 2016). As a whole, the claims at issue here are directed to a series of simple steps:

(1) "***acquiring*** [a] first [and second] imagery of a plurality of vehicles at a first [and second] location at a first [and second] time;"

(2) "***identifying*** a first vehicle from the acquired first [and second] imagery;"

(3) "***determining*** the speed of the first vehicle;"

(4) "***generating*** a citation signal when the speed of the first vehicle exceeds a predetermined speed;" and

(5) "***attempting to transmit*** the citation signal to a device of a person associated with the vehicle."

*See e.g.*, Dkt. No. 1-1 ('084 Patent) at cl. 1 (emphasis added).

The focus of the Exemplary Claims is a series of steps dealing with handling and managing (though not creating) information; indeed, they recite "***collecting*** the information" (i.e., "acquiring"), "***analyzing*** the information" (i.e., "identifying" and "determining"), and performing a "post-solution activity," "***presenting*** the results" (i.e., "generating" and "transmitting"), all of which collectively reveal that the focus of the claims are directed to an abstract idea. *See Electric Power*, 830 F.3d at 1353–54 ("***collecting*** information, including when limited to particular content (which does not change its character as information), . . . ***analyzing*** information by steps people go through in their minds, or by mathematical algorithms, without more, . . . [and] merely ***presenting*** the results of abstract processes of collecting and analyzing information, without more (such as identifying a particular tool for presentation)," . . . "are within the realm of abstract ideas.") (emphasis added) (internal citations and quotations omitted). Thus, like the claims the Federal Circuit found to be abstract in *Electric Power*, the '084 Patent claims are "clearly focused on the combination of those abstract-idea processes . . . not on [] an improvement in computers as tools,

but on certain independently abstract ideas that use computers as tools." *Id.* at 1354. And though less lengthy, the '084 Patent claims are like the *Electric Power* claims in that they "do not go beyond requiring the collection, analysis, and display of available information in a particular field, stating those functions in general terms, without limiting them to technical means for performing the functions that are arguably an advance over conventional computer and network technology." *Id.* at 1351; *see also, Chamberlain Grp., Inc. v. Techtronic Indus. Co.*, 935 F.3d 1341, 1346–47 (Fed. Cir. 2019) (explaining that courts typically examine earlier cases in which a similar or parallel descriptive nature can be seen as part of their abstract idea analysis) *citing Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1294 (Fed. Cir. 2016).

Additionally, the Federal Circuit has taught that to assist in determining whether a claim embodies an abstract idea, courts often consider whether the steps "can be performed in the human mind, or by a human using pen and paper." *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1372 (Fed. Cir. 2011). With respect to the "***analyzing*** information step" (i.e., "determining/computing the vehicle's speed") the equation used to calculate speed, based on the ***collected*** information, is plainly one that can be performed in the human mind, or by a human using pen and paper. *See* Dkt. No. 1-1 ('084 Patent) at cls. 1, 5, 8, 11, 15; *see e.g., id.* at cl. 5 ("wherein the speed of the vehicle is determined based on a difference between the first time and the second time and a distance between the first location and the second location.").[3]

Moreover, the Federal Circuit has instructed that the "directed to" inquiry under *Mayo/Alice* step one, may "involve looking to the specification to understand the problem facing the inventor and, ultimately, what the patent describes as the invention." *ChargePoint, Inc. v.*

---

[3] Exemplary Claim 1 and dependent claim 5 do not require that "determining a speed of the [] vehicle" be calculated using a computer. *See* Dkt. No. 1-1 ('084 Patent) at cls. 1, 5.

*SemaConnect, Inc.*, 920 F.3d 759, 766 (Fed. Cir. 2019).[4] The '084 Patent specification describes the invention as "a method and system for detecting and reporting a speeding infraction by a vehicle," confirming that the claims are ***directed to*** the steps of ***collecting*** and ***analyzing*** the vehicle identifying information as well as the vehicle's location and speed, and ***presenting*** it to certain parties or devices—i.e., an abstract idea. Dkt. No. 1-1 ('084 Patent) at 2:22–24. Furthermore, the specification identifies two "problems facing the inventor" (1) "Travelers with advance knowledge of congestion along a planned route make alternate routing decisions based upon the nature of traffic flow. . . [but k]nowing the rate of speed of traffic in a congested area, however, requires the traveler to rely upon the estimates of real-time broadcast reports over the radio over *[sic]* television resulting from ***personally observed traffic speeds*** (typically by helicopter or live camera feed);" and (2) "a need for ticketing speeding motorists without jeopardizing the safety of police and other motorists, and without requiring the presence of ***a police officer to actually witness the speeding***." *Id.* at 1:61–63, 1:65–2:3, 2:14–17 (emphasis added). Therefore, the written description of the claimed invention confirms not only that the claims are ***directed to*** the abstract idea of ***collecting*** and ***analyzing*** and ***presenting*** vehicle-related information, but that this process can be and historically has been, ***performed in the human mind or by a human using pen and paper***, and therefore, the '084 Patent claims as a whole are directed to an abstract idea.

Additionally, the analysis step of the claims merely requires performing a basic mathematical calculation to determine the speed of the vehicle (i.e., distance/time = rate). Dkt. No. 1-1 ('084 Patent) at cl. 5 ("[T]he speed of the vehicle is determined based on a difference between

---

[4] *See Chamberlain*, 935 F.3d at 1346 ("The specification is helpful in illuminating what a claim is directed to . . .[but] reliance on the specification must always yield to the claim language in identifying that focus.") (quoting *ChargePoint*, 920 F.3d at 766).

the first time and the second time and a distance between the first location and the second location."); *see also id.* at cls. 8, 15. Once the vehicle speed is determined, a citation signal is generated, "when the speed of the [] vehicle exceeds a predetermined speed." *Id.* at cls. 1, 8, 15. The Supreme Court has rejected the notion that recitation of a practical application (to the extent the claims of the '084 Patent do so) for the calculation could alone make the invention patentable. *See Parker v. Flook*, 437 U.S. 584, 590 (1978) ("The notion that post-solution activity, no matter how conventional or obvious in itself, can transform an unpatentable principle into a patentable process exalts form over substance . . [as any] competent draftsman could attach some form of post-solution activity to almost any mathematical formula."). Thus, no argument about the mathematical formula itself or the practical applicability of the claims of the '084 Patent can rescue them from subject matter ineligibility.

### 2.   The Claims Fail to Recite an Inventive Concept, and Thus Fail Step Two of the *Mayo/Alice* Test.

The Federal Circuit has explained that "the second-stage inquiry (where reached) [] look[s] more precisely at what the claim elements add—specifically, whether, in the Supreme Court's terms, they identify an 'inventive concept' in the application of the ineligible matter to which (by assumption at stage two) the claim is directed." *Electric Power*, 830 F.3d. at 1353 (citations omitted); *see also Parker*, 437 U.S. at 594 ("[T]he discovery of such a phenomenon [of nature or mathematical formula] cannot support a patent unless there is some other inventive concept in its application."). Thus, if the Court determines that the claims of the '084 Patent are directed to an abstract idea, it should next analyze the claims under *Mayo/Alice* step two, where the result will be the same—the claims are ineligible for patent protection.

The Supreme Court has warned that "[a] claim that recites an abstract idea must include additional features to ensure that the claim is more than a drafting effort designed to monopolize

the abstract idea." *Alice* 573 U.S. at 221 (citing *Mayo*, 132 S.Ct. at 1297). Like the claims in *Electric Power*, the claims of the '084 Patent "do not even require a new source or type of information, or new techniques for analyzing it." 830 F.3d. at 1355; *see also id.* ("Merely requiring the selection and manipulation of information—to provide a 'humanly comprehensible' amount of information useful for users,—by itself does not transform the otherwise-abstract processes of information collection and analysis.").

The Federal Circuit has instructed that the step two inquiry "must turn to any requirements for ***how*** the desired result is achieved." *Id.* (emphasis in original). And again, the '084 Patent claims, like the claims in *Electric Power*, "do not require any nonconventional computer, network, or display components, or even a 'non-conventional and non-generic arrangement of known, conventional pieces,' but merely call for performance of the claimed information collection, analysis, and display functions 'on a set of generic computer components' and display devices." *Id.* (citing *Bascom*, 827 F.3d at 1349–52). The specification of the '084 Patent supports this conclusion:

- [T]he embodiments reside primarily in combinations of apparatus components and processing steps related to implementing a system and method for managing digital images. Accordingly, ***the system and method components have been represented*** where appropriate ***by conventional symbols in the drawings, showing only those specific details that are pertinent to understanding the embodiments*** of the present invention so as not to obscure the disclosure with details that will be ***readily apparent to those of ordinary skill in the art*** having the benefit of the description herein. *Id.* at 3:32–41 (emphasis added).

- ***Imaging systems*** 130 can ***acquire imagery*** of vehicles 120 passing through the location 110A, 110B. The ***imagery can include individual images, or a collection of images in Video imagery***. An ***image recognizer*** 140 can identify individual ones of the vehicles 120 such that an elapsed time between the identified individual ones of the vehicles 120 in the captured imagery at the different locations 110 can be used to ***determine a rate of travel (speed) by a processor*** 300 for each of the identified individual ones of the vehicles 120. *Id.* at 3:32–41 (emphasis added); *see also id.* at Fig. 1.

- The ***server*** 210 and the ***data store*** 250 may be accessed by a law enforcement agency 280 via the ***communications network*** 220 and the citation signal may be generated and sent to a law enforcement agency 280 by the ***host server*** 210. Multiple different ***Internet connected onboard navigation systems*** 260 can be communicatively coupled to the ***host server*** 210 over ***computer communications network*** 220. *Id.* at 5:7–15 (emphasis added).

- ***[I]mage recognition is performed by a processor*** at an ***image capture device***. Alternatively, the ***images captured by image capture devices may be transmitted to a central processor that performs image recognition*** on the various images captured by the image capture devices. *Id.* at 5:53–57 (emphasis added).

- ***Image recognition may be achieved by applying an image recognition algorithm*** to a first image to produce a first result, applying the image recognition algorithm to a second image to produce a second result, and by comparing the first and second results to determine if the same vehicle is in both images. *Id.* at 5:57–63 (emphasis added).

- The ***central processor*** may also ***compute a speed*** of a vehicle and ***generate a citation signal*** when the speed of the vehicle exceeds a speed limit. *Id.* at 5:63–65 (emphasis added).

- The citation signal may be a ***data signal*** . . . *Id.* at 5:65 (emphasis added).

- In a preferred embodiment, the invention is implemented in ***software, which includes but is not limited to firmware, resident software, microcode,*** and the like. *Id.* at 7:24–26 (emphasis added).

- Furthermore, the invention can take the form of a ***computer program product accessible from a computer-usable or computer readable medium providing program code for use by or in connection with a computer or any instruction execution system***. *Id.* at 7:26–31 (emphasis added).

- For the purposes of this description, ***a computer-usable or computer readable medium can be any apparatus that can contain, store, communicate, propagate, or transport the program for use by or in connection with the instruction execution system, apparatus, or device***. The ***medium can be an electronic, magnetic, optical, electromagnetic, infrared, or semiconductor system*** (or apparatus or device). Examples of a computer-readable medium include a semiconductor or Solid state memory, magnetic tape, a removable computer diskette, a random access memory (RAM), a read-only memory (ROM), a rigid magnetic disk and an optical disk. Current examples of optical disks include compact disk-read only memory (CD-ROM), compact disk-read/write (CD-R/W) and DVD. *Id.* at 7:32–45 (emphasis added).

- ***A data processing system suitable for storing and/or executing program code will include at least one processor coupled directly or indirectly to***

13

*memory elements through a system bus*. The memory elements can include local memory employed during actual execution of the program code, bulk storage, and cache memories which provide temporary storage of at least some program code in order to reduce the number of times code must be retrieved from bulk storage during execution. *Id.* at 7:46–54 (emphasis added).

- *Input/output or I/O devices* (including but not limited to *keyboards, displays, pointing devices, etc.*) can be *coupled to the system either directly or through intervening I/O controllers*. *Id.* at 7:54–56 (emphasis added).

- *Network adapters* may also be coupled to the system to *enable the data processing system to become coupled to other data processing systems or remote printers or storage devices through intervening private or public networks*. *Modems, cable modem and Ethernet cards are just a few of the currently available types of network adapters*. *Id.* at 7:56–62 (emphasis added).

Similar to the claims in *Alice*, the claims of the '084 Patent merely require generic computer implementation of human-performable methods and fail to transform the previously described abstract ideas into a patent-eligible invention. *Alice* 573 U.S. at 221; *see also Gottschalk*, 409 U.S. at 65 ("The mathematical procedures can be carried out in existing computers long in use, no new machinery being necessary [a]nd, as noted, they can also be performed without a computer."); *Electric Power*, 830 F.3d at 1355 ("Nothing in the claims, understood in light of the specification, requires anything other than off-the-shelf, conventional computer, network, and display technology for gathering, sending, and presenting the desired information.").

The claims of the '084 Patent are directed to the abstract idea of collecting information, analyzing it, and displaying certain results of the collection and analysis and therefore, are directed to patent ineligible subject matter. The Complaint should be dismissed under Rule 12 of the Federal Rules of Civil Procedure.

### B. Contiguity's Infringement Allegations Should Be Dismissed Because They Are Predicated on Interpretations Not Supported Under 35 U.S.C. § 112.

While an "element-by-element pleading standard for patent infringement . . . goes beyond the standard the Supreme Court articulated in *Iqbal* and *Twombly*," (*see Bot M8 LLC v. Sony Corp.*

*of Am.*, 4 F.4th 1342, 1352 (Fed. Cir. 2021)), "[t]he adequacy of the facts pled depends on the breadth and complexity of both the asserted patent and the accused product or system and on the nature of the defendant's business activities." *K-Tech Telecomms., Inc. v. Time Warner Cable, Inc.*, 714 F.3d 1277, 1286 (Fed. Cir. 2013). For a "simple technology," a plaintiff may plausibly plead infringement by providing the asserted patents, identifying the accused products "by name and by attaching photos of the product packaging," and alleging that the accused products meet "each and every element of at least one claim… either literally or equivalently." *Disc Disease Sols. Inc. v. VGH Sols., Inc.*, 888 F.3d 1256, 1260 (Fed. Cir. 2018).

A claim of patent infringement requires every limitation of a patent claim to be met either literally or under the doctrine of equivalents. *Intendis GMBH v. Glenmark Pharms. Inc.*, 822 F.3d 1355, 1360 (Fed. Cir. 2016). Courts dismiss complaints at the pleading stage where a plaintiff has failed to plausibly allege infringement as to every element of at least one claim. *See De La Vega v. Microsoft Corp.*, Nos. W-19-CV-00612-ADA, W-19-CV-00617-ADA, 2020 WL 3528411, at *6 (W.D. Tex. Feb. 11, 2020); *Bartonfalls LLC v. Turner Broad. Sys., Inc.*, No. 2:16-cv-1127-JRG-RSP, 2017 WL 1375205, at *2 (E.D. Tex. Mar. 15, 2017); *Soar Tools, LLC v. Mesquite Oil Tools, Inc.*, No. 5:19-CV-243-H, 2021 WL 3030066, at *11 (N.D. Tex. July 2, 2021).

But, even when a complaint provides sufficient factual statements, a plaintiff may still fail to plausibly state a claim where (1) the infringement allegation rests on an implausible claim construction, *Ottah v. Fiat Chrysler*, 884 F.3d 1135, 1141–42 (Fed. Cir. 2018), or (2) "the factual allegations are actually inconsistent with and contradict infringement," *Bot M8*, 4 F.4th at 1354. Both bases for dismissal apply here, just as they recently did in a case that Judge Biery in this District recently transferred to the Northern District of California (which the Northern District of California then dismissed). *See ALD Social, LLC v. Verkada, Inc.*, Case No. 23-cv-00049, Dkt.

No. 38 (N.D.C.A. Feb. 7, 2023) (previously W.D.T.X. San Antonio Division Case No. 22-cv-00975-FB).[5] Because the Complaint requires either an implausible claim construction or facts inconsistent with direct infringement, the allegations of direct infringement should be dismissed.

The only apparent allegations of infringement included with the Complaint are in the form of a claim chart attached as Dkt. No. 1-2. Despite color-coding the claim limitations in the left column of the chart, Contiguity does not map specific claim elements to any particular materials in the "Evidence of Infringement" section of its chart. *See generally* Dkt. No. 1-2. Making the chart even more difficult to read, Plaintiff does not even break the chart up into rows; for example,



Claim 4 and Claim 1 appear to be charted in the same row of the claim chart:

*Id.* at 4.

---

[5] Remarkably, Plaintiff's counsel here was the same counsel involved in the *ALD Social* case, and the approaches to pleading in the two cases involve similar generic cover pleadings and non-specific claim charts.

Claim 1 of the '084 Patent requires "acquiring first imagery of a plurality of vehicles at a first location at a first time" and "acquiring second imagery of a plurality of vehicles at a second location at a second time." *Id*. at 3; *see also* Dkt. No. 1-1 ('084 Patent) at 8:8–11. The only apparent factual support for the assertion that these claim elements are met is the following image, which is



taken from the *same camera* in the *same location*:

Dkt. No. 1-2 at 3. The fact it is the same camera is confirmed not just by the fact that the camera frame has not moved (looking, for example, at the crosswalk's position in the images above) but that the "Location" and "Lane" fields are identical in both images. *Id*. Indeed, the language that Plaintiff has apparently added to the claim chart confirms that "[t]he camera present on the road collects the images…" *Id*.

Plaintiff's assertion of infringement is either based on an implausible claim construction or facts inconsistent with literal infringement, and its Complaint should be dismissed. *ALD Social*, Case No. 23-cv-00049, Dkt. No. 38 at 6–10.

For Plaintiff's allegation of infringement to succeed, it must construe "first location" and "second location" as being the same location. This is implausible.

First and foremost, Plaintiff invites the Court to violate the fundamental canon of claim construction that different terms are presumed to mean different things. *See, e.g.*, *Simpleair v. Sony Ericsson Mobile Commc'ns*, 820 F.3d 419 at 431 (Fed. Cir. 2016). This Court should decline the

invitation to do so, and should recognize that the claim terms "first location" and "second location" mean different things, and therefore at a minimum require that the first and second images be captured from different locations. The remaining dependent claims confirm this fact. In Claim 5, for example, the '084 Patent is clear that the speed of a vehicle is calculated based on a *distance* between the first location and the second location. Dkt. No. 1-1 ('084 Patent) at 8:27–30. And the system claims (i.e., independent claims 8 and 15) specifically confirm that the inventions of the '084 Patent require first image capture devices (cameras) at the different locations. *Id.* at 8:36–53; 9:7–10:9.

This interpretation, which is the only plausible interpretation, is fully consistent with the specification of the '084 Patent. In describing the embodiments of the invention, the '084 Patent *never* describes a way to calculate speed other than by determining the amount of time that has elapsed for two images captured from cameras with a known spacing from each other. *See, e.g.*, *id.* at 2:22–59. Figure 1 likewise illustrates two cameras (130) spaced apart to capture images at



**FIG. 1**

different times:

*Id.* at Fig. 1. And Figure 4, the only flow chart describing the process of determining speed recited

in method claim 1, is specific that images are captured at a "first location" and a "second location." *Id*. at Fig. 4. The specification describes how this is done: "The speed of the vehicle is determined at block 420. The speed can be determined from the ratio of the distance between the first and second location and the difference between the first time and the second time." *Id*. at 7:8–11.

Thus, in *each* embodiment, the images are captured by devices at different locations, and the speed of a vehicle is determined based in part of the distance between the devices. Under any plausible claim construction, a system only practices the method of claim 1 if it uses images captured from two different locations; any construction to the contrary is not only inconsistent with the specification, but would lack written description support and would thus be improper.

Because the pleadings assert infringement based solely on a pair of images taken from the same camera, it does not state a claim for direct infringement that is based on a plausible claim construction, and dismissal is appropriate.

This District has previously dismissed complaints where unspecified screen shots are not mapped to particular claim limitations. *De La Vega*, 2020 WL 3528411, at *6 (dismissing infringement count where plaintiff "only presented three screenshots of evidence without explaining how that evidence shows that [defendant] (and/or a third-party) performs" a claimed step). The Eastern District of Texas has also found that similar approaches warrant dismissal for failure to plead infringement. *See, e.g., Chapterhouse, LLC v. Shopify, Inc*., No. 2:18-CV-00300-JRG, 2018 WL 6981828, at *2 (E.D. Tex. Dec. 11, 2018) ("While screenshots may be useful in laying out a plausible allegation of patent infringement, Plaintiff must further allege how the screenshots meet the text of the exemplary claim in order to lay out sufficient factual allegations which might permit the Court to find that the *Iqbal/Twombly* standard is met.")

Nor can Contiguity be heard to invoke the doctrine of equivalents to rescue its otherwise

deficient allegations from implausibility. The Complaint asserts, in a conclusory fashion, that Conduent infringes "literally or [under/by] the doctrine of equivalents." Dkt. No. 1 ¶¶ 11, 12, 15. This is the full extent of Contiguity's doctrine of equivalents allegations. Such conclusory doctrine of equivalents allegations fail to move the needle on the implausibility of Contiguity's pleadings. *See Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016) (declining to credit "allegations that merely restate the legal elements of a claim"); *Soar Tools*, 2021 WL 3030066, at *6. Nor could a single camera ever be an equivalent to multiple cameras; the *way* such a system would work is substantially different, as in a single-camera system, the distance-between-cameras concept at the heart of the '084 Patent's purported invention is simply irrelevant.

The Court should dismiss Contiguity's Complaint for failing to adequately allege infringement of all limitations of a single claim of the '084 Patent. And this Court should dismiss the Complaint with prejudice, as the Complaint represents Contiguity's best attempt to show infringement, but fails (and will continue to fail) due to the fundamental difference between the '084 Patent and the accused products. This Court has recognized the propriety of dismissals with prejudice in such settings. *Pierce v. Hearne Indep. Sch. Dist.*, 600 F. App'x 194, 200 (5th Cir. 2015); *see also Grecia Est. Holdings LLC v. Meta Platforms, Inc.*, No. 6:21-CV-00677-ADA, 2022 WL 2019296, at *8 (W.D. Tex. June 6, 2022) (dismissing inadequately pled patent infringement complaint with prejudice); *Soar Tools*, 2021 WL 3030066, at *11 (same).

### C.   Contiguity Fails To Plead Facts That Could Support Pre-Suit Knowledge of the '084 Patent.

"To state a claim for induced infringement, a plaintiff must allege that the defendant knew of the patent and that the induced acts constitute patent infringement." *Addiction and Detoxification Institute L.L.C. v. Carpenter*, 620 F. App'x 934, 938 (Fed. Cir. 2015) (citing *Commil USA, LLC v. Cisco Sys., Inc.*, 135 S.Ct. 1920, 1926 (2015)). This Court dismisses indirect

infringement claims directed to pre-suit infringement when there is no factual allegation that could support pre-suit knowledge. For example, in *Castlemorton Wireless, LLC v. Bose Corp.*, this Court dismissed claims of indirect infringement because the "complaint does not plead any facts that would support an allegation of pre-suit knowledge." No. 6:20-CV-00029-ADA, 2020 WL 6578418, at *5 (W.D. Tex. July 22, 2020).

The Complaint merely asserts that "***[a]t least since being served*** by this Complaint and corresponding claim charts, Defendant has actively, knowingly, and intentionally continued to induce infringement of the '084 Patent . . ." Dkt. No. 1 ¶ 15 (emphasis added). That is, reading the Complaint at face value, it does not plead *any fact* to support the conclusion that Conduent was aware, pre-suit, of Contiguity's belief that any Conduent acts constituted patent infringement. These vague assertions are consistent with Conduent's understanding that the *only* notice pled in the Complaint is that the Complaint itself (and the attached Claim Chart) provides notice. *See*, *e.g.*, *id.* ¶¶ 13–17; Dkt. No. 1-2.

Despite the above, Contiguity appears to allege both pre-suit and post-suit indirect infringement. *See*, *e.g.*, *id.* ¶¶ 13–17. Conduent seeks dismissal of any pre-suit indirect infringement claims. This Court dismisses indirect claims for patent infringement based on pre-suit notice; the Complaint simply does not contain any plausible allegations supporting such claims. For the same reasons as articulated in *Castlemorton*, Contiguity's allegation that Conduent became aware of the '084 Patent via the Complaint and attached Claim Chart cannot support claims of pre-suit indirect infringement, and the Court should dismiss those claims.

## VI.   CONCLUSION

The '084 Patent is invalid under 35 U.S.C. § 101; the infringement allegations are predicated on claim interpretations that are not supported under 35 U.S.C. § 112, and the

Complaint lacks support for any pre-suit notice, meaning that any pre-suit indirect infringement allegations are not supported by plausibly alleged facts. Conduent's Motion to Dismiss should be granted, and the Complaint should be dismissed.

February 14, 2023

Respectfully submitted,

By: /s/ *Melissa Smith*
Melissa Smith (Texas Bar No. 24001351)
Gillam & Smith LLP
303 South Washington Avenue
Marshall, TX 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257
melissa@gillamsmithlaw.com

Benjamin E. Weed (IL6294052; *pro hac vice* application forthcoming)
Gina A. Johnson (IL6320853; *pro hac vice* application forthcoming)
Melissa M. Haulcomb (IL6331368; *pro hac vice* application forthcoming)
K&L GATES LLP
70 W. Madison St., Suite 3300
Chicago, IL 60602
Telephone: (312) 781-7166
Fax: (312) 827-8000
benjamin.weed@klgates.com
gina.johnson@klgates.com
melissa.haulcomb@klgates.com

*Attorneys for Defendant Conduent Business Services, LLC.*

**CERTIFICATE OF SERVICE**

I declare that on February 14, 2023 a copy of this document has been served by the Court's CM/ECF system on all counsel of record who have made an appearance in this case and consented to email service.

*/s/ Melissa Smith*
Melissa Smith