**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | |
|---|---|
| **CONTIGUITY, LLC,**<br>　　　Plaintiff,<br><br>　　　v.<br><br>**CONDUENT BUSINESS SERVICES,**<br>**LLC,**<br>　　　Defendant. | Case No. 6:23-cv-00038-XR<br><br>Patent Case<br><br>Jury Trial Demanded |

**RESPONSE TO DEFENDANT CONDUENT BUSINESS
SERVICES, LLC'S MOTION TO DISMISS**

i

# TABLE OF CONTENTS

I.      BACKGROUND ..................................................................................................1

II.     STANDARD FOR PATENTABLE SUBJECT MATTER .....................................1

III.    THE FOCUS OF THE CLAIMED ADVANCE OVER THE PRIOR ART
        ESTABLISHES THE CLAIMS ARE DIRECTED TO PATENTABLE
        SUBJECT MATTER ..........................................................................................4

        A.  The Claims of the '084 Patent Are Directed to Concrete Steps........................5
        B.  Claim 1 of the '084 Patent Provides Sufficient Granularity ............................7
        C.  Defendant Oversimplifies the Claimed Invention................................................9

IV.     THERE ARE INVENTIVE ASPECTS OF THE '084 PATENT THAT
        PRECLUDE DISMISSAL AT THIS STAGE ....................................................10

        A.  Factual Allegations in the Patent Specification Preclude Judgment .............10
        B.  The Claims of the '084 Patent Overcome a Specific Problem in Safely
            Providing Accurate Vehicular Speed ................................................................12

V.      PLAINTIFF HAS SUFFICIENTLY PLED PATENT INFRINGEMENT .........12

VI.     REQUEST TO FILE AMENDED COMPLAINT.................................................14

VII.    CONCLUSION ..................................................................................................14

## TABLE OF AUTHORITIES

**Cases**

*Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208 (2014) .......................................2, 5

*Ariosa Diagnostics, Inc. v. Sequenom, Inc.*, 788 F.3d 1371, 1376 (Fed. Cir. 2015) .................................................................................................................6, 7

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ...............................................................1

*Bell Atl. Corp. v. Twombly*, 500 U.S. 544 (2007)........................................................1

*Berkheimer v. HP Inc.*, 881 F.3d 1360 (Fed. Cir. 2018) .................................. 10, 12

*Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342 (Fed. Cir. 2021)............................2

*Brittan Comm'ns Int'l Corp. v. Sw. Bell Tel. Co.*, 313 F.3d 899 (5th Cir. 2002) ........2

*BSG Tech LLC v. BuySeasons, Inc.*, 899 F.3d 1281 (Fed. Cir. 2018) ....................10

*CareDx, Inc. v. Natera, Inc.*, No. CV 19-0567-CFC-CJB, 2021 WL 4439600 (D. Del. Sept. 28, 2021) ........................................................................................3

*ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759 (Fed. Cir. 2019) ..........6, 11

*Diamond v. Diehr*, 450 U.S. 175 (1981)......................................................................2

*Eyetalk365, LLC v. Zmodo Tech. Corp.*, 356 F. Supp. 3d 1059 (D. Nev. 2018) ......5

*Gottschalk v. Benson*, 409 U.S. 63 (1972)..................................................................2

*Guidry v. Am. Pub. Life Ins. Co*, 512 F.3d 177 (5th Cir. 2007) ..............................12

*Hikma Pharms. USA Inc. v. Vanda Pharms. Inc.*, No. 18-817, 2019 WL 6699397........................................................................................................3

*HP Inc. v. Berkheimer*, No. 18-415, 2019 WL 6715368 ............................................3

*Hughes v. The Tobacco Inst., Inc.*, 278 F.3d 417 (5th Cir. 2001) .............................1

*Le Roy v. Tatham*, 55 U.S. (14 How.) 156 (1852)......................................................2

*Mayo Collaborative Servs. v. Prometheus Lab'ys, Inc.*, 566 U.S. 66 (2012) ...........2

*McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354 (Fed. Cir. 2007)................................1

*Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91 (2011) ............................................10

*Slyce Acquisition Inc. v. Syte-Visual Conception Ltd.*, No. 6:19-CV-00257-ADA, 2020 U.S. Dist. LEXIS 9451 (W.D. Tex. Jan. 10, 2020) ........................3

*Smart Sys. Innovations, LLC v. Chi. Transit Auth.*, 873 F.3d 1364 (Fed. Cir. 2017) (Linn, J., dissenting-in-part and concurring-in-part)................................3

*Sound View Innovations, LLC v. Delta Air Lines, Inc.,* Civil Action No. 19-659-CFC (D.Del. April 3, 2020) .................................................................................3

*TLI Communs. LLC v. AV Auto., L.L.C. (In re TLI Communs. LLC Patent Litig.)*, 823 F.3d 607 (Fed. Cir. 2016) .................................................................6

*Trading Techs. Int'l, Inc. v. IBG LLC*, 921 F.3d 1084 (Fed. Cir. 2019) .............5, 10

*Yu v. Apple Inc.*, 1 F.4th 1040 (Fed. Cir. 2021) (Newman, J., dissenting)................3

Plaintiff Contiguity, LLC ("Plaintiff" or "Contiguity") files this Response to Conduent

Business Services, LLC ("Defendants" or "Conduent") Motion to Dismiss ("Motion") [1] showing

the Court that it should be denied because Wireless's patent claims are patent eligible.

## I.      BACKGROUND

On January 20, 2023, Plaintiff Contiguity filed its Original Complaint[2] against Conduent for

infringement of claims of United States Patent No. 8,031,084 ("the '084 patent") (referred to as

the "Patent-in-Suit"). Defendant seeks dismissal and alleges the claims of the '084 Patent are

invalid under 35 U.S.C. §§ 101 and 112. Defendant's Motion to Dismiss should be denied.

## II.     STANDARD FOR PATENTABLE SUBJECT MATTER

A 12(b)(6) motion asserts a "purely procedural question not pertaining to patent law."

*McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1356 (Fed. Cir. 2007). On a motion for judgment

on the pleadings, factual allegations set out in the pleadings are taken in the light most favorable

to the nonmoving party. *Hughes v. The Tobacco Inst., Inc.*, 278 F.3d 417, 420 (5th Cir. 2001). To

survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim

to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 500 U.S. 544, 547 (2007). This

standard does not require "detailed factual allegations;" however, this standard does not permit

accusations that are completely devoid of factual support. *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009) (quoting *Twombly*, 550 U.S. at 555).

The plausibility standard requires the plaintiff to plead "enough facts to raise a reasonable

expectation that discovery will reveal evidence of [the claim]." *Twombly*, 500 U.S. at 545.

Therefore, a patentee must only "plead facts sufficient to place the alleged infringer on notice as

to what he must defend." *McZeal*, 501 F.3d at 1356. There must be some factual allegations that,

[1] Doc. No. 7.
[2] Doc. No. 1.

1

when taken as true, articulate why it is plausible that the accused product infringes the patent claim. *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1353 (Fed. Cir. 2021). Judgment on the pleadings is appropriate where "there are no disputed issues of material fact and only questions of law remain." *Brittan Comm'ns Int'l Corp. v. Sw. Bell Tel. Co.*, 313 F.3d 899, 904 (5th Cir. 2002).

Section 101 defines subject matter eligible for patenting as "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101. The Supreme Court has long read exceptions into § 101: laws of nature, natural phenomena, and abstract ideas are not patentable. *See, e.g.*, *Diamond v. Diehr*, 450 U.S. 175, 185 (1981). According to the Court, these are the fundamental tools of scientific endeavor and granting monopolies over them risks dousing the flame of innovation the U.S. patent regime is meant to fan. *See Gottschalk v. Benson*, 409 U.S. 63, 67 (1972); *Mayo Collaborative Servs. v. Prometheus Lab'ys, Inc.*, 566 U.S. 66, 71 (2012); *see also Le Roy v. Tatham*, 55 U.S. (14 How.) 156, 175 (1852) ("A principle, in the abstract, is a fundamental truth; an original cause; a motive; these cannot be patented, as no one can claim in either of them an exclusive right.").

In *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208 (2014), the Court established a two-step framework for determining whether a patent claims an ineligible concept. First, determine whether the claims are "directed to" a judicial exception. *Id.* at 217. If so, proceed to the second step and "consider the elements of each claim both individually and as an ordered combination to determine whether the additional elements transform the nature of the claim into a patent-eligible application." *Id.* (omitting quotations).

This framework is "almost impossible to apply consistently and coherently" in the context of abstract ideas. *Smart Sys. Innovations, LLC v. Chi. Transit Auth.*, 873 F.3d 1364, 1377 (Fed.

Cir. 2017) (Linn, J., dissenting-in-part and concurring-in-part); *Yu v. Apple Inc.*, 1 F.4th 1040, 1049 (Fed. Cir. 2021) (Newman, J., dissenting) ("In the current state of Section 101 jurisprudence, inconsistency and unpredictability of adjudication have destabilized technologic development in important fields of commerce."). Members from every branch of the federal government have decried the uncertain state of § 101 law and begged guidance from the Supreme Court, Congress, or both. *See CareDx, Inc. v. Natera, Inc.*, No. CV 19-0567-CFC-CJB, 2021 WL 4439600, at *5 (D. Del. Sept. 28, 2021) (collecting quotes from current and former Federal Circuit judges describing the uncertainty infecting § 101 law); *Slyce Acquisition Inc. v. Syte-Visual Conception Ltd.*, No. 6:19-CV-00257-ADA, 2020 U.S. Dist. LEXIS 9451, at *19 (W.D. Tex. Jan. 10, 2020) (same); Brief for United States, *HP Inc. v. Berkheimer*, No. 18-415, 2019 WL 6715368, at *10–13 (Dec. 6, 2019) (responding to call for views of the Solicitor General, requesting the Supreme Court's guidance on patent eligibility standards); Brief for United States, *Hikma Pharms. USA Inc. v. Vanda Pharms. Inc.*, No. 18-817, 2019 WL 6699397, at *13–21 (Dec. 6, 2019) (same).

In the context of computer-related technology, a claim recites an inventive concept "when the claim limitations involve more than performance of well-understood, routine, and conventional activities previously known to the industry." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1367 (Fed. Cir. 2018), cert. denied, 2020 WL 129532 (U.S. Jan. 13, 2020) (internal quotation marks, alterations, and citations omitted).

The Court in *Sound View Innovations, LLC v. Delta Air Lines, Inc.,* Civil Action No. 19-659-CFC (D.Del. April 3, 2020) determined that it need not and "does not decide whether the asserted patents are directed to abstract ideas because statements in the specifications of the asserted patents that are alleged or incorporated by reference in the complaints plausibly establish that the asserted claims contain an inventive concept."

3

Applying these standards, at least Claims 1 and 4 of the '084 Patent is patent eligible and the Plaintiff has plausibly established the claims of the '084 Patent are inventive.

### III.   THE FOCUS OF THE CLAIMED ADVANCE OVER THE PRIOR ART ESTABLISHES THE CLAIMS ARE DIRECTED TO PATENTABLE SUBJECT MATTER

The Claims of the '084 patent are directed to improvements in traffic management, and in particular, to vehicle speed acquisition and citation such that a speeding infraction by a vehicle is detected and reported.[3]  The '084 patent teaches that the claimed solution for acquiring vehicle speed and citation of speeding infractions was not available prior to the invention of the '084 patent:

travelers are less likely to prefer an alternate route. Knowing the rate of speed of traffic in a congested area, however, requires the traveler to rely upon the estimates of real-time[4]

broadcast reports over the radio over television resulting from personally observed traffic speeds (typically by helicopter or live camera feed).

In addition to providing accurate information concerning congestion, there is a need to determine when a vehicle is speeding and thereby endangering others. Conventionally, a police officer detecting a speeding motorist waits at the side of the road in a traffic flow area to detect the speed of the vehicle and must then enter the flow of traffic to signal the driver of the speeding vehicle to pull over. This endangers the police officer and endangers other motorists. Further, a police department may have an insufficient number of officers to patrol every highway and road to catch speeding motorists. Therefore, there is a need for ticketing speeding motorists without jeopardizing the safety of police and other motorists, and without requiring the presence of a police officer to actually witness the speeding.[5]

Further, there is no record evidence of the claimed solution existing prior to the invention of the claims of the '084 patent and thus there is no record evidence that the claimed improvement for

---

[3] Doc. No. 1-1, column 1, lines 20-22 and column 2, lines 22-24 (1:20-22 and 2:22-24) and Abstract.
[4] Doc. No. 1-1, 1:65-67.
[5] *Id*. at 2:1-18.

exchanging information using mobile communications devices were conventional at the time of the invention.

## A.  The Claims of the '084 Patent Are Directed to Concrete Steps

To properly evaluate whether asserted claims "are directed to a patent-eligible concept,"[6] a court must examine "the focus of the claimed advance over the prior art to determine if the character of the claim as a whole, considered in light of the specification, is directed to excluded subject matter."[7]  In other words, abstractness is determined by analyzing the claim as a whole, not whether each element standing alone is abstract.[8]  Taking the claims as a whole, the focus of the claims is vehicle speed acquisition and citation such that a vehicle owner maybe automatically cited for exceeding a predetermined vehicle speed.[9] ("Focus").  This Focus is supported by the Abstract:

Embodiments of the present invention provide a method, system and computer program product for vehicle speed acquisition and citation. In accordance with an embodiment of the present invention, multiple different imaging systems can be placed individually at different locations along a route of travel, such as a highway, byway or waterway. Images of different vehicles can be captured at each of the locations and different ones of the different vehicles can be image-recognized. A time of travel between pairs of the locations can be determined for selected ones of the different vehicles in order to compute a rate of travel for the selected ones of the different vehicles. A citation signal is generated when a speed of a vehicle exceeds a predetermined speed limit such that the vehicle owner may be automatically cited for speeding.[10]

---

[6] *Alice Corp. Pty. Ltd.*, 573 U.S. at 218.
[7] *Trading Techs. Int'l, Inc. v. IBG LLC*, 921 F.3d 1084, 1092 (Fed. Cir. 2019).
[8] *See e.g., Alice Corp.*, 573 U.S. 208, 219, 134 S. Ct. 2347, 2359 (2014); *Eyetalk365, LLC v. Zmodo Tech. Corp.*, 356 F. Supp. 3d 1059, 1067 (D. Nev. 2018).
[9] Doc. No. 1-1 at Abstract and Claims, *generally*.
[10] *Id*. at Abstract.

5

Assessing the focus of the claims from the Abstract is proper as the directed to inquiry may also involve looking to the Abstract or patent specification to understand the problem facing the inventor and, ultimately, what the patent describes as the invention.[11]

Further support for this Focus is provided in the Summary of the Disclosure:

> The present invention advantageously provides a method and system for detecting and reporting a speeding infraction by a vehicle. According to one aspect, a method includes acquiring first imagery of a plurality of vehicles at a first location at a first time. The method includes acquiring second imagery of a plurality of vehicles at a second location at a second time. A first vehicle is identified from the acquired first and second imagery. The speed of the vehicle is determined based on a difference between the first time and the second time and a distance between the first location and the second location. When the speed of the vehicle exceeds a predetermined speed, a citation signal is generated.[12]

The '084 patent's specification provides further detail for the focus:

---

[11] *See ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 767 (Fed. Cir. 2019) *citing TLI Communs. LLC v. AV Auto., L.L.C. (In re TLI Communs. LLC Patent Litig.)*, 823 F.3d 607, 612 (Fed. Cir. 2016); *Ariosa Diagnostics, Inc. v. Sequenom, Inc.*, 788 F.3d 1371, 1376 (Fed. Cir. 2015) (in the step one analysis, pointing to statements from the specification that supported the identified focus was the key discovery described in the patent).
[12] Id. at 2:22-33.

6

> According to another aspect, the invention provides an apparatus for determining a vehicle speeding infraction. The apparatus includes a memory to store image data from a plurality of video capture devices spaced a known distance apart. The apparatus includes a processor in communication with the memory. The processor recognizes a vehicle appearing in a first image captured by a first one of the plurality of video capture devices at a first time and appearing in a second image captured by a second one of the plurality of video capture devices at a second time. The processor computes a speed of the vehicle based on the first time, the second time, and the known distance.
>
> According to another aspect, the invention provides a system of determining a speeding violation by a vehicle. The system comprises a first image capture device at a first location and a second image capture device at a second location. The first image capture device has a first processor to perform an image recognition algorithm to detect a vehicle in a first image captured by the first image capture device, and to determine a first time at which the vehicle passes in proximity to the first location. The second image capture device has a second processor to perform an image recognition algorithm to detect a vehicle in a second image captured by the second image capture device, and to determine a second time at which the vehicle passes in proximity to the second location.[13]

As such, the focus is limited to improving the detection and automatic reporting of speeding infractions by a vehicle and is not just a mathematical calculation to determine the speed of the vehicle.  The problem is specific to the use of imaging devices to determine the speed of a vehicle and automatically reporting that speed, identity and location of the vehicle to a police vehicle or other user via, for example, the Internet, text messaging, Web page, e-mail.[14] This allows police officers to be safely positioned outside of the traffic area, and for example, a subscriber to be alerted to the speed and location of a vehicle.[15]

### B.  Claim 1 of the '084 Patent Provides Sufficient Granularity

Claim 1 of the '084 Patent recites:

---

[13] Id. at 2:34-59.
[14] Doc. No. 1-1 at 4:13-29.
[15] *Id*. at 4-27-42.

1. A method of infraction detection based on vehicle traffic flow data, the method comprising:

acquiring first imagery of a plurality of vehicles at a first location at a first time;

acquiring second imagery of a plurality of vehicles at a second location at a second time;

identifying a first vehicle from the acquired first imagery and the acquired second imagery;

determining a speed of the first vehicle;

generating a citation signal when the speed of the first vehicle exceeds a predetermined speed; and

attempting to transmit the citation signal to a device of a person associated with the vehicle.[16]

The '084 patent specification then provides substantial detail for the claimed invention and its interconnectivity with each claimed element for sufficient specificity to be concrete. For instance, the '084 patent provides reference to systems and methods through the detailed flowcharts and diagrams that can be used to perform the solutions of the claimed inventions. Further, the '084 patent's specification with reference to Figure 4 provides detailed steps for carrying out an exemplary embodiment:

- In block **405**, a first image is acquired at a first location at a first time.
- At block **410**, a second image is acquired at a second location at a second time.
- At block **415**, an identity of a vehicle appearing in both the first and second images is acquired.
- The speed of the vehicle is determined at block **420**. The speed can be determined from the ratio of the distance between the first and second location and the difference between the first time and the second time.
- At block **425**, the system determines if the speed limit has been exceeded by the identified vehicle. If not, the process ends. If the speed limit has been exceeded, a citation signal is generated at block **430**.

---

[16] Doc. No. 1-1 at 8:6-18.

- The citation signal may also include the speed of the vehicle, the vehicle's tag number, the vehicle's location and an image of the vehicle. A paper citation may automatically be issued at block **435** or a police officer alerted. Further, the speed and amount of the fine for speeding may be communicated to the vehicle at block **440.**[17]

FIG. 1 is a schematic illustration of a process for vehicle traffic flow data acquisition and reporting for onboard vehicle navigation.[18]  FIG. 2 is a schematic illustration of an onboard vehicle navigation data distribution data processing system configured for vehicle traffic flow data acquisition and reporting.[19] FIGS. 3A and 3B, taken together, are a flow chart illustrating a process for vehicle traffic flow data acquisition and reporting for onboard vehicle navigation.[20] In short, there is ample disclosure of how to implement embodiments of the claimed invention.

### C.  Defendant Oversimplifies the Claimed Invention

Defendant's Motion is an oversimplification and focuses on abstract claim elements rather than the claim as a whole.  Defendant "describe[s] the claims at such a high level of abstraction and untethered from the language of the claims all but ensures that the exceptions to § 101 swallow the rule."[21]  For instance, Defendant's Motion opens its argument over generalizing the teachings of the patent by providing that claim 1 of the '084 patent is directed to "the abstract idea of collecting information, analyzing it, and displaying certain results of the collection and analysis"[22]  It is noteworthy that Defendant cites other case holdings but does not cite to the actual words of Claim 1. The *Alice* framework requires more than this cursory analysis.

This is not a case of simply an improved method of organizing information, rather Plaintiff's claimed invention is directed at a solution to a problem unique to addressing, for

---

[17] *Id*. at 7:1-20, and Fig. 4.
[18] *Id*. at 3:1-3.
[19] *Id*. at 4-6.
[20] *Id*. at 7-9.
[21] *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1337 (Fed. Cir. 2016).
[22] Doc. No. 7 at 12.

example, the annoyance of congested traffic (motorist will avoid roadways where the speed is excessively slow due to traffic), the safety of police officers and motorists when issuing a citation for excessive vehicular speed, and reducing the number of police officers needed to perform this task. This is an issue unique to vehicular speeds.

## V.   THERE ARE INVENTIVE ASPECTS OF THE '084 PATENT THAT PRECLUDE DISMISSAL AT THIS STAGE

### C. Factual Allegations in the Patent Specification Preclude Judgment

To evaluate whether asserted claims satisfy 's second step of "search[ing] for an 'inventive concept,'"[23] a court considers "the elements of each claim both individually and as an ordered combination to determine whether the additional elements transform the nature of the claim into a patent-eligible application."[24] While a court may determine patent eligibility at the Rule 12(b)(6) stage, it is "only when there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law."[25]  "Plausible factual allegations may preclude dismissing a case under § 101."[26]  All facts pertinent to the eligibility question must be proven by clear and convincing evidence.[27]  Here, Plaintiff makes numerous factual allegations in the patent specification that are not rebutted by Defendant.

Even if this Court determines Plaintiff's claims are directed towards an abstract idea, patent eligibility is possible if the abstract idea include[s] 'additional features' to ensure that the claim is more than a drafting effort designed to monopolize the abstract idea."[28]  "These additional features cannot simply be well-understood, routine, conventional activities previously

---

[23] *Alice*, 573 U.S. at 217, 134 S.Ct. 2347
[24] *BSG Tech LLC v. BuySeasons, Inc.*, 899 F.3d 1281, 1289 (Fed. Cir. 2018)
[25] *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018).
[26] *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018).
[27] *HP Inc.*, 881 F.3d at 1368 citing *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 95 (2011).
[28] *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 773 (Fed. Cir. 2019) (quotations and alterations omitted); *see also Trading Techs.*, 921 F.3d at 1093 ("Step two 'looks more precisely at what the claim elements add' to determine if 'they identify an inventive concept in the application of the ineligible matter to which...the claim is directed." (quoting *SAP*, 898 F.3d at 1167).

10

known to the industry."[29]  Here, the primary improvement over the prior art mentioned in the

patent specification is a claimed improvement, namely improvements in "providing accurate

information concerning congestion," and "determin[ing] when a vehicle is speeding and thereby

endangering others.[30]  The '084 patent's specification teaches the claimed solution was not

available prior to the invention of the claims of the '084 patent:

> travelers are less likely to prefer an alternate route. Knowing the rate of speed of traffic in a congested area, however, requires the traveler to rely upon the estimates of real-time [31]

> broadcast reports over the radio over television resulting from personally observed traffic speeds (typically by helicopter or live camera feed). [32]

> In addition to providing accurate information concerning congestion, there is a need to determine when a vehicle is speeding and thereby endangering others. Conventionally, a police officer detecting a speeding motorist waits at the side of the road in a traffic flow area to detect the speed of the vehicle and must then enter the flow of traffic to signal the driver of the speeding vehicle to pull over. This endangers the police officer and endangers other motorists. Further, a police department may have an insufficient number of officers to patrol every highway and road to catch speeding motorists. Therefore, there is a need for ticketing speeding motorists without jeopardizing the safety of police and other motorists, and without requiring the presence of a police officer to actually witness the speeding. [33]

Further, there is no record evidence (especially at the pleading stage) of the claimed

solution existing prior to the invention of the claims of the '084 patent and thus there is no record

evidence that the claimed improvement was conventional at the time of the invention.  As such,

there are factual allegations of an improvements over the prior art, which must be taken as true at

---

[29] *ChargePoint*, 920 F.3d at 773 (quotation and alteration omitted); *see HP Inc.*, 881 F.3d at 1367 ("The second step of the *Alice* test is satisfied when the claim limitations involve more than performance of well-understood, routine, and conventional activities previously known to the industry." (quotation and alteration omitted))
[30] Doc. No. 1-1 at 1 at 1:65 to 2:18.
[31] *Id*.
[32] *Id*.
[33] *Id*.

this stage of the litigation,[34] Thus, taking all inferences in Plaintiff's favor,[35] dismissal at this stage is inappropriate.[36]

### D. The Claims of the '084 Patent Overcome a Specific Problem in Safely Providing Accurate Vehicular Speed

The Claims of the '084 patent provides a solution to a specific problem arising in vehicular traffic, namely safely providing accurate vehicular speed and real-time issuing of citations.[37] The patent specification provides that such a solution was not possible prior to the claimed invention.[38]  Thus, the claimed improvements cannot be said to be conventional when viewing the claim as a whole.

The claims therefore, when "taken together as an ordered combination, ... recite an invention that is not merely the routine or conventional," safely providing accurate vehicular speed and real-time issuing of citations.[39]  The claims do not try to pre-empt every use of measuring vehicular speed or issuing citations, but rather recite a specific way to facilitate a safe way to measure actual vehicular speed and automatically issuing a citations thus claiming additional features that render the claims patent eligible.[40]

### VI.    PLAINTIFF HAS SUFFICIENTLY PLED PATENT INFRINGEMENT

Contiguity submits that it has alleged facts to support its claims for infringement of the '084 patent, as made clear in the claim chart attached to its Complaint.[41] In them, Contiguity maps the claims in the '084 Patent to the website describing the Conduent DriveSafe Enforcement

---

[34] *Aatrix Software, Inc.*, 882 F.3d at 1125; *Guidry v. Am. Pub. Life Ins. Co*, 512 F.3d 177, 180 (5th Cir. 2007).
[35] *Guidry*, 512 F.3d at 180.
[36] *Aatrix Software, Inc.*, 882 F.3d AT 1125; *see also Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018).
[37] Doc. No. 1-1 at 2:20-59.
[38] *Id.* at 2:4-18.
[39] Doc. No. 1-3 at 2:3-19, Abstract and Claims, *generally*.
[40] *See, e.g., DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1259 (Fed. Cir. 2014).
[41] Doc. No. 1-2.

System.[42] Conduent then argues against infringement, based on its construction of the terms in the claims and its unsupported characterization of the support found in the material linked in the claim charts.[43] However, contrary to Conduent's assertions, Contiguity does map every specific claim element to Conduent's system.  The allegations are not conclusory. Instead, the claim charts point to specific documentation that explains how the Conduent's system infringes each claim. *See, e.g.,* Ex. B to Plaintiff's Complaint, at pp. 2-6 re the '084 patent.

Courts have found complaints sufficiently pleaded in circumstances similar to this one. For example, in *Disc Disease Solutions Inc. v. VGH Solutions, Inc.*[44], the Federal Circuit held that a complaint sufficiently pleaded direct infringement of claims directed to a spinal brace by "specifically identif[ying] the three accused products—by name and by attaching photos of the product packaging as exhibits—and alleg[ing] that the accused products meet 'each and every element of at least one claim." That is the same pleading method Plaintiff Contiguity employed here. Further, it is worth noting that the patent at issue here contains even fewer independent claims than the patent at issue in *Disc Disease*: the *Disc* Disease patent contained four independent claims, whereas the '084 patent contains three independent claims. Similarly, in *Repairify, Inc. v. Keystone Auto. Indust., Inc.*, 2022 U.S. Dist. LLEXIS 118254, (W.D. Tex. July 6, 2022), this Court found sufficient a complaint alleging patent infringement where the "Complaint provided images and descriptions of the elements of the claims" more than met the pleading standard.[45]

*Vervain, LLC v. Micron Tech., Inc.*[46] does not support Defendant. The court in *Vervain* held the plaintiff to a "higher level of pleading" based on the complexity and novelty of the

---

[42] *Id.*
[43] Doc. No. 21, at 6-7.
[44] 888 F.3d 1256, 1260 (Fed. Cir. 2018).
[45] *Id.* at * 18.
[46] 2022 U.S. Dist. LEXIS 54 (Jan. 3, 2022).

invention and the patents.[47]

Plaintiff contends it has adequately pled direct infringement. Therefore, if the Court denies Defendant's motion to dismiss Plaintiff's claims for direct infringement, it must deny Defendant's motion to dismiss Plaintiff's indirect infringement claims as well.

Here, Plaintiff has more than met the requirements at the pleading stage. Defendant's Motion to Dismiss should be denied.

## VII.   REQUEST TO FILE AMENDED COMPLAINT

Contiguity believes that the allegations in its Complaint plausibly allege that Conduent infringed the '084 patent. However, should the Court be inclined to grant any portion of Conduent's Motion, Contiguity respectfully requests an opportunity to file an amended complaint to correct any identified pleading issues.

## VIII.   CONCLUSION

For all the above reasons, Contiguity respectfully requests that the Court deny Defendant's Motion to Dismiss. In the alternative, Contiguity request the Court to grant leave for it to amend its Complaint.

DATED: February 28, 2023                    Respectfully submitted,
                                            **Ramey LLP**

                                            /s/William P. Ramey
                                            William P. Ramey, III
                                            Texas Bar No. 24027643

                                            5020 Montrose Blvd., Suite 800
                                            Houston, Texas 77006
                                            (713) 426-3923 (telephone)
                                            (832) 900-4941 (fax)

                                            *Attorneys for CONTIGUITY LLC*

---

[47] *Vervain*, at *15.

14

**CERTIFICATE OF SERVICE**

Pursuant to the Federal Rules of Civil Procedure and LR5, I hereby certify that all counsel of record who have appeared in this case are being served on this day of February 28, 2023, with a copy of the foregoing via email and ECF filing.

/s/ William P. Ramey, III
William P. Ramey, III