IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISIO

| | |
|---|---|
| CONTIGUITY, LLC,<br>　　　*Plaintiff*<br><br>-vs-<br><br>CONDUENT BUSINESS SERVICES, LLC,<br>　　　*Defendant* | §<br>§<br>§　W-23-CV-00038-XR<br>§<br>§<br>§<br>§<br>§ |

**ORDER**

On this day, the Court considered the above-captioned case. Before this Court is Defendant's motion to dismiss (ECF No. 7), Plaintiff's response (ECF No. 10), and Defendant's reply (ECF No. 16). After careful consideration, Defendant's Motion to Dismiss is **GRANTED**.

**BACKGROUND**

Plaintiff is the assignee of all right, title, and interest in U.S. Patent No. 8,031,084 (the "'084 Patent" or "the Patent"), which was issued on October 4, 2011. ECF No. 1 at 2; ECF No. 1-1. The patent is titled "method and system for infraction detection based on vehicle traffic flow data" and is used to monitor vehicle speeds. *Id*. First, multiple devices are placed at several geographic locations along a single route, such as a highway. ECF No. 1-1. Then, the devices monitor the time it takes for a vehicle to travel from one device to another by taking images at each station and comparing the timestamps of the images, thereby calculating the vehicle's speed. *Id*. If the vehicle travels faster than the predetermined speed limit for the area, an automatic citation signal is generated. *Id*.

Plaintiff filed suit in federal court alleging causes of action for direct and induced patent infringement related to the '084 Patent. ECF No. 1. Plaintiff states that Defendant infringes on

1

claims 1[1] and 4[2] by creating a similar system that uses video and radar to track, document, and report vehicles' speed while traveling through specified zones.[3] ECF No. 1-2.

Defendant advances three arguments in its motion to dismiss. First, Defendant argues that '084 Patent claims 1 and 4 are "directed to the abstract idea of collecting information, analyzing it, and displaying certain results of the collection and analysis," and are thus abstract and ineligible for patent protection.[4] ECF No. 7 at 6. Second, Defendant maintains that the claims are unsupported by the '084 Patent's specifications, as required under 35 U.S.C. § 112. *Id*. at 7. Finally, Defendant argues that Plaintiff has not pled pre-suit knowledge of the asserted patent so as to succeed on an indirect infringement claim. Because this Court resolves Defendant's motion on the first issue, the other challenges are not addressed.

## **LEGAL STANDARDS**

### I.  **Motion to Dismiss**

In patent cases, issues that are unique to patent law are governed by Federal Circuit precedent. *See Woods v. DeAngelo Marine Exhaust Sys., Inc.*, 692 F.3d 1272, 1279 (Fed. Cir. 2012). But because motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) raise purely procedural issues, courts apply the law of the regional circuit—here, the Fifth Circuit—when

---

[1] Claim 1 provides: A method of infraction detection based on vehicle traffic flow data, the method comprising:
acquiring first imagery of a plurality of vehicles at a first location at a first time;
acquiring second imagery of a plurality of vehicles at a second location at a second time;
identifying a first vehicle from the acquired first imagery and the acquired second imagery;
determining a speed of the first vehicle:
generating a citation signal when the speed of the first vehicle exceeds a predetermined speed; and
attempting to transmit the citation signal to a device of a person associated with the vehicle.
[2] Claim 4 is dependent on claim 1 and reads: "The method of claim 1, wherein the citation signal includes a license tag of the first vehicle and a location of the vehicle."
[3] Plaintiff has identified only claims 1 and 4 in its complaint. ECF No. 1. No other claims are at issue.
[4] Discussing a "claim" in the patent context can be confusing given the term's dual meaning. "Claim" might refer to a "cause of action," or it might refer to the portion of a patent that follows the patent's specification and defines the scope of the patentee's monopoly. *Senju Pharm. Co. v. Apotex Inc.*, 746 F.3d 1344, 1349 (Fed. Cir. 2014). To avoid confusion, the Court uses "cause of action" when referring to Plaintiff's allegations and uses "claim" in the patent sense.

deciding whether such a motion should be granted. *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1347 (Fed. Cir. 2016).

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for the dismissal of a complaint for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

In considering a motion to dismiss under Rule 12(b)(6), all factual allegations from the complaint should be taken as true, and the facts are to be construed in the light most favorable to the nonmoving party. *Fernandez-Montes v. Allied Pilots Assoc.*, 987 F.2d 278, 284 (5th Cir. 1993). Still, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "'[N]aked assertions' devoid of 'further factual enhancement,'" and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the presumption of truth. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557); *see also R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (stating that the Court should neither "strain to find inferences favorable to plaintiffs" nor accept "conclusory allegations, unwarranted deductions, or legal conclusions.").

## II. Patent Eligibility

To be eligible for patent protection, a patent must comprise "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof."[5] 35 U.S.C. § 101. However, "basic tools[s] of scientific and technological work," such as those related to laws of nature, natural phenomena, and abstract ideas, are not patentable. *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.,* 569 U.S. 576, 589 (2013).

In *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66 (2012) and *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208 (2014), the Supreme Court laid out a two-part framework to resolve patent eligibility disputes under § 101. First, courts must "determine whether the claims at issue are directed to one of those patent-ineligible concepts." *Alice*, 573 U.S. at 217. If so, courts must then "consider the elements of each claim both individually and as an ordered combination to determine whether the additional elements transform the nature of the claim into a patent-eligible application." *Id*. (internal quotations omitted). This second step is often described as the search for an "inventive concept," which ensures that the "patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." *Mayo,* 566 U.S. at 72–73.

Patentability under 35 U.S.C. § 101 is a threshold legal issue that may properly be resolved at the motion to dismiss stage. *Bilski v. Kappos*, 561 U.S. 593, 602 (2010); *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121 (Fed. Cir. 2018). Although patent eligibility is a question of law, "there can be subsidiary fact questions which must be resolved en route to the ultimate legal determination." *Aatrix*, 882 F.3d at 1128. For example, at step two of *Alice*/*Mayo*, the Court must examine whether the claims contain an "inventive concept." Claims constitute

---

[5] "The term 'process' means process, art or method, and includes a new use of a known process, machine, manufacture, composition of matter, or material." 35 U.S.C.A. § 100(b).

inventive concepts when they "involve more than performance of well-understood, routine, [and] conventional activities previously known to the industry," *Aatrix*, 882 F.3d at 1128, which itself is a question of fact. Thus, relying only on the materials appropriate at the motion to dismiss stage, "when the complaint contains concrete allegations that individual elements and the claimed combination are not well-understood, routine, or conventional activity, the asserted patent can survive a Rule 12(b)(6) motion at *Alice* step two." *Mirror Imaging, LLC v. PNC Bank, N.A.*, No. W-21-CV-00518-ADA, 2022 WL 229363, at *4 (W.D. Tex. Jan. 26, 2022).

## **DISCUSSION**

### I. *Alice/Mayo* Step One

At *Alice/Mayo* step one, "the claims are considered in their entirety to ascertain whether their character as a whole is directed to excluded subject matter." *Internet Pats. Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015). In doing so, courts should be cautious of "oversimplifying the claims because at some level, all inventions . . . embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas[.]" *In re TLI Commc'ns LLC Pat. Litig.*, 823 F.3d 607, 611 (Fed. Cir. 2016) (internal quotations omitted).

Defendant argues that the claims are "directed to the abstract idea of collecting information, analyzing it, and displaying certain results of the collection and analysis," albeit in the specific context of vehicle speed acquisition and citation. ECF No. 7 at 6. Directing the Court to *Univ. of Fla. Rsch. Found., Inc. v. Gen. Elec. Co.,* 916 F.3d 1363 (Fed. Cir. 2019) and *Elec. Power Grp., LLC v. Alstom S.A.,* 830 F.3d 1350, 1351 (Fed. Cir. 2016), Defendant argues that the Federal Circuit has previously found similar patents ineligible for protection as abstract data collection methods.

Plaintiff responds that this is an oversimplification of its patent and that the '084 Patent is not "simply a method of organization information." ECF No. 10 at 13. Instead, Plaintiff maintains that the '084 Patent resolves specific problems associated with traffic and road safety. *Id*. Furthermore, Plaintiff argues that the '084 Patent was the first of its kind to use imaging to detect speeding infractions which, as the first invention, provided a significant advancement over prior (presumably human) methods of detecting infractions. *Id*. at 8. Finally, Plaintiff points the Court to the '084 Patent specification diagrams as evidence that the patent is sufficiently granular to indicate improvements from prior technology. *Id*. at 12.

After evaluating the pleadings and the '084 Patent specifications, the Court has determined that the '084 Patent is focused on the abstract concept of collecting and analyzing data, and merely mechanizes concepts capable of resolution by the human brain.

When evaluating whether a patent is directed towards an abstract concept, the Federal Circuit advises courts to evaluate whether the claims "focus on a specific means or method[] or are instead directed to a result or effect that itself is the abstract idea and merely invokes generic processes and machinery." *Secured Mail Sols. LLC v. Universal Wilde, Inc.,* 873 F.3d 905, 909 (Fed. Cir. 2017). To that end, the Federal Circuit has "held claims ineligible as directed to an abstract idea when they merely collect electronic information, display information, or embody mental processes that could be performed by humans." *Thales Visionix Inc. v. United States*, 850 F.3d 1343, 1346–47 (Fed. Cir. 2017). Like the patents at issue in *Univ. of Fla. Rsch. Found., Inc*. and *Elec. Power Grp. LLC*, the '084 Patent is fundamentally concerned with collecting data for presentation.

In *Univ. of Fla. Rsch. Found., Inc.*, the Federal Circuit assessed a method and system for converting physiologic data from hospital bedside machines into a single, usable format.

Previously, many hospitals manually tracked patient data because computers could not successfully integrate data from different bedside machines. The Federal Circuit found that the patent in question "proposes replacing the pen and paper methodologies with data synthesis technology in the form of device drivers written for the various bedside machines that allow the bedside device to present data from the various bedside machines in a configurable fashion within a single interface." *Univ. of Fla. Rsch. Found., Inc.*, 916 F.3d at 1367. In so finding, the court determined that this was a "quintessential 'do it on a computer' patent: it acknowledges that data from bedside machines was previously collected, analyzed, manipulated, and displayed manually, and it simply proposes doing so with a computer." *Id.*. Moreover, because the patent described its method in "purely functional terms," without explaining "specific improvement[s] to the way computers operate," the court found the patent was "directed to abstract ideas." *Id*. at 1368.

Similarly, the plaintiffs in *Elec. Power Grp., LLC*, owned patents describing a method for real-time detection and analysis of events on an interconnected electric power grid. Essentially, the system received data from several sources, analyzed that data based on pre-determined metrics, and displayed both the event data and analysis. Like *Univ. of Fla. Rsch. Found., Inc.*, the Federal Circuit found that the patent was focused "on collecting information, analyzing it, and displaying certain results of the collection and analysis." *Elec. Power Grp., LLC*, 830 F.3d at 1353.

The '084 Patent is analogous to patents in both *Univ. of Fla. Rsch. Found., Inc.* and *Elec. Power Grp., LLC* and falls into the category of collecting information. The '084 system collects information (images of a vehicle), analyzes it (compares two images to calculate speed), and displays results (whether or not the vehicle exceeded the speed limit). While Plaintiff notes that the collection is directed to a particular problem—traffic congestion—limiting the invention to a technological environment does "not make an abstract concept any less abstract." *Elec. Power*

7

*Grp.,* 830 F.3d at 1353 ("Accordingly, we have treated collecting information, including when limited to particular content (which does not change its character as information), as within the realm of abstract ideas.").

Moreover, like the claims in *Univ. of Fla. Rsch. Found., Inc.*, the '084 Patent describes its method in purely functional terms. For example, claim 1 covers "acquiring" images, "identifying" vehicles, "determining the speed," "generating a citation," and "attempting to transmit" the citation. In doing so, the claims are "directed to the use of conventional or generic technology in a nascent but well-known environment, without any claim that the invention reflects an inventive solution to any problem presented by combining the two." *In re TLI,* 823 F.3d at 612.

Moreover, although the program conducts mathematical analysis on the images, "scientific truth[s], or the mathematical expression of it, [are] not patentable invention[s]." *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972); *see also* ECF No. 1-1 ("The speed of the vehicle is determined based on a difference between the first time and the second time and a distance between the first location and the second location."). Relatedly, while the '084 "computes speed," ECF No. 1-1, the calculations essentially equate to a human mental process, which is a subcategory of abstract ideas. *Benson*, 409 U.S. at 67 ("[M]ental processes . . . are not patentable."); *Elec. Power Grp., LLC*, 30 F.3d at 1355 ("In a similar vein, we have treated analyzing information by steps people go through in their minds, or by mathematical algorithms, without more, as essentially mental processes within the abstract-idea category.").

Thus, claims 1 and 4 are directed to the abstract idea of collecting, analyzing, and displaying data.

8

## II.  *Alice*/*Mayo* Step Two

Step two of the *Alice*/*Mayo* framework requires this Court to determine whether claims 1 and 4 "contain[] an inventive concept sufficient to transform the claimed abstract idea into a patent-eligible application." *Alice*, 573 U.S. at 221 (internal quotations omitted). The claims must include "additional features" to ensure "that the [claims are] more than a drafting effort designed to monopolize" the abstract idea. *Alice*, 573 U.S. at 221. "These additional features cannot simply be well-understood, routine, [or] conventional activities previously known to the industry." *ChargePoint, Inc. v. SemaConnect, Inc.,* 920 F.3d 759, 773 (Fed. Cir. 2019) (internal quotations omitted). However, "patentees who adequately allege their claims contain inventive concepts survive a § 101 eligibility analysis under Rule 12(b)(6)." *ChargePoint, Inc.*, 920 F.3d at 773 (internal citations omitted).

Plaintiff claims that the '084 Patent is the first mechanized "solution" to determining traffic congestion and speeding infractions. ECF No. 10 at 15. Because the record does not contain evidence to the contrary, Plaintiff argues that it has sufficiently pled factual allegations of improvements of the prior (nonexistent) art. *Id*. Defendant counters that this argument goes to the *novelty* of the idea, which is irrelevant under the *Alice*/*Mayo* framework. ECF No. 16 at 11.

Plaintiff's claims do not describe an inventive concept. At their essence, claims 1 and 4 describe a method to assess a vehicle's speed: Plaintiff's devices acquire images of a vehicle at two different points, identify the vehicle in both images as one and the same, determine the vehicle's speed using basic arithmetic, and then either generate a citation or transfer this information to a "subscriber," oftentimes law enforcement. Claims 1 and 4 effectively digitize a mathematical equation (speed = distance ÷ time) but fail to provide any technical detail on how the invention goes beyond plugging in collected data to that equation. For example, the claims do

9

not cover the specific camera system used in the devices, the vehicle system that integrates the images with a navigation system, nor the technology that automatically generates a citation. Even if Plaintiff is correct that it was the first to digitize detecting traffic infractions, without providing additional details of the unique collection methods—perhaps the camera, the means of reporting the data or the communication system—or algorithm, the claims merely embody an abstract concept. In conclusion, "simply implementing a mathematical principle on a physical machine, namely, a computer, [is] not a patentable application of that principle." *Mayo*, 566 U.S. at 84 (citing *Benson*, 409 U.S. at 71).

Therefore, the asserted claims of the '084 Patent do not recite any inventive concepts under step of the *Alice/Mayo* framework. The claims are invalid under 35 U.S.C. § 101.

## CONCLUSION

Defendant's Motion to Dismiss is **GRANTED** as to claims 1 and 4 of the '084 Patent. Plaintiff's cause of action is **DISMISSED WITHOUT PREJUDICE** and Plaintiff is granted leave to file an amended complaint curing the deficiencies identified herein within fourteen (14) days of the filing of this order.

It is so **ORDERED**.

**SIGNED** this 12th day of May, 2023.

_____
Xavier Rodriguez
United States District Judge