**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | |
|---|---|
| **CONTIGUITY, LLC,**<br>    Plaintiff, | Civil Action No. 6:23-cv-00038-XR |
| v. | |
| **CONDUENT BUSINESS SERVICES, LLC,**<br>    Defendant | **JURY TRIAL DEMANDED** |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO
DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

i

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................... 1

II. ARGUMENT .....................................................................................................................3

    A.    Contiguity's FAC Pleads Specific Factual Allegations Precluding Resolution of Section 101 at the Pleading Stage ................................................................................. 3

    B.    The '084 Patent is Not Directed to an Abstract Idea at Step One ................................... 6

    C.    The '084 Patent Claims an Inventive Concept at Step Two ......................................... 10

    D.    Claim Construction Issues Preclude Resolution of Section 101 Eligibility At the Pleading Stage ................................................................................................................ 12

    E.    Contiguity Has Plausibly Pleaded Infringement .............................................................. 14

III. CONCLUSION..................................................................................................................15

## TABLE OF AUTHORITIES

**Cases**

*Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121 (Fed. Cir. 2018)........... 4, 12

*BASCOM Global Internet Services, Inc. v. AT&T Mobility LLC* 827 F.3d 1341
  (Fed. Cir. 2016).................................................................................................................. 13

*Berkheimer v. HP Inc.*, 881 F.3d 1360 (Fed. Cir. 2018)............................................................. 2, 4

*Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350 (Fed. Cir. 2016) ....................................... 1

*Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327 (Fed. Cir. 2016)................................................ 13

*Ficep Corp. v. Peddinghaus Corp.*, No. CV 19-1994-RGA, 2021 WL 254104 (D. Del. Jan. 26,
  2021), *report and recommendation adopted*, No. 19-CV-1994-RG, 2021 WL 979564 (D. Del.
  Mar. 16, 2021).................................................................................................................. 9, 15

*Fitbit Inc. v. AliphCom*, No. 16-CV-00118-BLF, 2017 WL 819235 (N.D. Cal. Mar. 2, 2017)... 10

*Intellectual Ventures II LLC v. FedEx Corp.*, 2017 WL 6002762 n. 1 (E.D. Tex. 2017) .............. 4

*McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299 (Fed. Cir. 2016).......................... 7

*MyMail, Ltd. v. ooVoo, LLC*, 934 F.3d 1373 (Fed. Cir. 2019) ...................................................... 3

*Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337 (Fed. Cir. 2018) ............................................. 3, 17

*People.ai*, *Inc.*, 2023 WL 2820794 (Fed. Cir. Apr. 7, 2023). ........................................................ 8

*Repairify, Inc. v. Keystone Auto. Indus., Inc.,* No. W-21-CV-00819-ADA, 2022 WL 2479930
  (W.D. Tex. July 6, 2022) ..................................................................................................... 16

*Slyce Acquisition Inc. v. Syte – Visual Conception Ltd.*, 2020 WL 278481 (W.D. Tex. Jan. 10,
  2020) ...................................................................................................................................... 4

*Transp. Techs., LLC v. Los Angeles Cnty. Metro. Transportation Auth.*, No. CV 15-6423-RSWL-
  MRWX, 2016 WL 7444679 (C.D. Cal. July 22, 2016)......................................................... 2

*USC IP P'ship, L.P.*, 2021 WL 3134260 ..................................................................................... 17

*Wi-LAN Inc. v. LG Elecs., Inc.,* 382 F. Supp. 3d 1012 (S.D. Cal. 2019)..................................... 12

Plaintiff Contiguity, LLC ("Plaintiff" or "Contiguity") hereby files this Response in Opposition to Conduent Business Services, LLC's ("Defendant" or "Conduent") Motion to Dismiss ("Motion") Plaintiff's First Amended Complaint ("FAC").

## I. INTRODUCTION

After granting Defendant's First Motion to Dismiss on May 12, 2023, this Court allowed Plaintiff leave to amend its Original Complaint. On June 9, 2023, Plaintiff filed its FAC, which now includes new, specific factual allegations and a declaration from the inventor, Mr. Leigh Rothschild, supporting the eligibility of U.S. Pat. No. 8.031,084 ("the '084 Patent") under Section 101. *See* FAC, ¶¶ 10-24. Many of these allegations relate to three critical limitations of Claim 1 of the '084 Patent, the "determining the speed," "generating a citation signal" and "attempting to transmit the citation signal" limitations, which were not the focus of Conduent's First Motion to Dismiss or this Court's Order.

As argued herein, and as the additional allegations of the FAC make clear, these limitations remove claim 1 from the realm of abstractness, and show that claim 1 contains patent-eligible inventive concepts. The Federal Circuit has recently noted that "[a]utomation of a manual process may not be an abstract idea if the automated process differs from the manual process and provides a specific means or method that improves the relevant technology." *People.ai, Inc. v. Clari Inc.*, No. 2022-1364, 2023 WL 2820794, at *8 (Fed. Cir. Apr. 7, 2023). Conduent offers no evidence that the method of claim 1 is equivalent to the "manual" process of infraction detection, and this Court has no basis for drawing such an inference.

Moreover, Conduent's heavy and repeated reliance on *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350 (Fed. Cir. 2016) completely ignores the Federal Circuit's statement that methods that "**generate new data**" are inventive and therefore patent-eligible under Section 101. *Id*. at 1355 (emphasis added). Conduent makes no attempt to grapple with the "**generating a citation signal**" limitation of Claim 1 of the '084 Patent, or explain how this limitation would not be inventive under the very case it tries to rely upon.

1

At a minimum, the additional allegations of the FAC raise issues of fact that preclude resolution of subject matter eligibility under Section 101 at the pleading stage. *See, e.g., Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018) ("whether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field" at Step Two of the § 101 analysis "is a question of fact"). For example, the FAC specifically alleges that "databasing vehicles and then matching them in order to send a notice" was not conventional, nor was using image-based devices. FAC, ¶ 16. Using image-based devices was "more accurate" than conventional methods. *Id.*, ¶ 23. Moreover, "attempting to transmit the citation signal" was not even known in the prior art—let alone "conventional"—and was a "game-changer" that "could cause the offending individual driver to correct his illegal driving." *Id*. Courts have found patents in closely related fields of invention to pass muster at the Rule 12 stage. For example, an eligibility challenge to a patent "for traffic monitoring and for the automatic identification of a vehicle as it passes through a toll gate" was rejected in *Transp. Techs., LLC v. Los Angeles Cnty. Metro. Transportation Auth.*, No. CV 15-6423-RSWL-MRWX, 2016 WL 7444679, at *6 (C.D. Cal. July 22, 2016). The Court should reach a similar result here.

As discussed herein, Conduent's Motion largely ignores the specific factual allegations of the FAC and, instead of engaging with them directly, rehashes the Section 101 arguments of its First Motion to Dismiss. Ultimately, however, Conduent does not—and, at the pleading stage, *cannot*—refute the FAC's specific allegations that the "generating a citation signal" and "attempting to transmit the citation signal" limitations of Claim 1 of the '084 Patent contain inventive concepts that were not well-understood, routine, or conventional at the time of invention. For this reason alone, Conduent's Motion must be denied as to Section 101 grounds.

In addition, issues of claim construction preclude resolution of Section 101 issues at this stage. In the Court's Order, the Court suggested that "additional details"—such as details "of the unique collection methods" claimed, or details regarding "the camera, the means of reporting the data, or the communication system" or "algorithm," would render Claim 1 eligible. Dkt. No. 27 at 10. Here, at least the "determining a speed of the first vehicle" and "generating a citation signal"

limitations of Claim 1 *do* present such details, and properly construed, preclude resolution of eligibility at this stage. *See MyMail, Ltd. v. ooVoo, LLC*, 934 F.3d 1373, 1379 (Fed. Cir. 2019).

Further, Conduent challenges whether infringement has been adequately pleaded in the FAC, alleging that Contiguity's infringement allegations are based "defective claim construction." But, in so doing, Conduent raises issues of claim construction that render Conduent's own Motion premature. As the Federal Circuit has held, where a motion to dismiss hinges on disputed issues of claim construction, "[i]t is not appropriate to resolve these disputes…on a Rule 12(b)(6) motion, without the benefit of claim construction." *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1350 (Fed. Cir. 2018). Regardless, Contiguity has adequately pleaded infringement and Conduent's arguments are meritless.

Accordingly, as argued herein, Conduent's Motion should be denied.

## II.     ARGUMENT

### A.     Contiguity's FAC Pleads Specific Factual Allegations Precluding Resolution of Section 101 at the Pleading Stage

As an initial matter, it is important to recognize that, at Step Two of the *Mayo/Alice* analysis of patent-eligible subject matter under Section 101, the "question of whether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field is a question of fact." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018). "Any fact, such as this one, that is pertinent to the invalidity conclusion must be proven by clear and convincing evidence." *Id.* In Section 101 challenges, the question of eligibility may be determined at the pleadings stage "only when there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018).

"*Alice* is a difficult test to apply and yields inconsistent results." *Slyce Acquisition Inc. v. Syte – Visual Conception Ltd.*, 2020 WL 278481, at *7 (W.D. Tex. Jan. 10, 2020). This "widely known and extremely problematic" "lack of predictability and consistency" is a factor that has led this Court to favor delay of the Section 101 determination so that it can "spend more time

3

understanding the patents" before it, especially given that "even small technical details could loom large" in the Section 101 analysis. *Id*. "Because courts generally do not have sufficient technical expertise to be a POSITA or to appreciate the importance of particular technical details, in this Court's view, courts can either appoint technical experts to assist the court with a Rule 12(b) motion to dismiss based on § 101 eligibility or delay the determination of § 101 eligibility." *Id*. "Resolving validity issues at the Rule 12 stage can also tempt courts, sometimes improperly, to conclude that certain concepts are conventional or routine by way of judicial notice." *Intellectual Ventures II LLC v. FedEx Corp.*, 2017 WL 6002762, at *2 n. 1 (E.D. Tex. 2017).

In spite of the well-recognized factual issues at play in the Section 101 determination, and this Court's well-founded caution in addressing Section 101, Conduent downplays the additional factual allegations of the FAC and even asserts—falsely—that the FAC "does not plead any additional facts." Dkt. No. 33 at 3.

However, the FAC specifically alleges that, prior to the invention of U.S. Pat. No. 8,031,084 ("the '084 Patent"), "conventional methods of traffic speed detection 'in a congested area' 'require[d] the traveler to rely upon the estimates of real-time broadcast reports over the radio over television resulting from personally observed traffic speeds (typically by helicopter or live camera feed).'" FAC ¶ 10. "Prior to the invention, the conventional method for determining when a vehicle was speeding required the personal intervention of a police officer. As the patent explained, '[c]onventionally, a police officer detecting a speeding motorist waits at the side of the road in a traffic flow area to detect the speed of the vehicle and must then enter the flow of traffic to signal the drive of the speeding vehicle to pull over,' endangering the police officer and other motorists." *Id*., ¶ 12. "To address these and other problems in the field, the invention of the '084 Patent discloses a system and method whereby, '[w]hen a speed of a vehicle exceeds a speed limit, a citation signal is generated, and the vehicle owner may be automatically cited for speeding.'" *Id*., ¶ 13.

"[D]atabasing vehicles and then matching them in order to send a notice to the law enforcement authorities, as disclosed for example in Figure 3b of the '084 Patent, particularly at

4

345 and 350, was not well-understood, routine or conventional at the time of invention. Using image-based devices to capture the image of the vehicle also provides a distinct advantage over the prior system of using radar detection. The images captured by such devices provided records that could be used by law enforcement. By contrast, the radar systems conventionally used in the prior art did not have such an advantage." FAC, ¶ 16.

"Prior to the invention, conventional systems and methods for traffic management and detecting vehicle speed violations did not include 'generating a citation signal when the speed of the first vehicle exceeds a predetermined speed' or 'attempting to transmit the citation signal to a device of a person associated with the vehicle,' as claimed in Claim 1 of the '084 Patent." FAC, ¶ 17.

"Indeed, during prosecution of the '084 Patent, it was brought to the attention of the U.S. Patent & Trademark Office ("USPTO") Examiner that the prior art did not disclose or suggest the above-mentioned steps of 'generating a citation signal' and 'attempting to transmit the citation signal.'" FAC, ¶ 18. "In an amendment filed on or about March 7, 2011, during prosecution of the '084 Patent, it was pointed out that the prior art did not teach 'transmitting a citation signal that indicates a violation.' Generating and transmitting a citation signal, as claimed in Claim 1 of the '084 Patent, was not even known in the prior art, much less well-understood, routine, and conventional." *Id*., ¶ 19.

"These inventive concepts are captured in the 'generating a citation signal when the speed of the first vehicle exceeds a predetermined speed' and 'attempting to transmit the citation signal to a device of a person associated with the vehicle' steps of Claim 1 of the '084 Patent, both individually and in combination." FAC, ¶ 20. "The method claimed in Claim 1 of the '084 Patent was more efficient and less error-prone than conventional methods relied upon in the prior art, which relied on 'personal observation.'" *Id*., ¶ 21. "The method claimed in Claim 1 of the '084 Patent allowed for more accurate citation of speeding violations, and reduced danger to police officers and motorists, as it did not require a police officer to actually pull over the driver of a speeding vehicle before issuing a citation." *Id*., ¶ 22.

"The method claimed in Claim 1 of the '084 Patent, involving 'attempting to transmit the citation signal to the device of a person associated with the vehicle,' was also a game-changer in that it was a more precise system of notifying individuals (police or otherwise) of infractions. For example, it is more precise in that in captures with precision the vehicle, and depending on the resolution of the imaging devices, may also capture images of the driver. This is important in traffic situations where the offending party may claim that he was not driving the vehicle. Since the invention could accomplish this in real time, it provided a profound effect on driver safety, since it could cause the offending individual driver to correct his illegal driving and thus increase safe travels." FAC, ¶ 23.

"Whereas the prior art contemplated, at best, issuing a ticket when any violation is detected, it did not disclose transmitting the signal to the associated person that indicates a violation. This failure of conventional methods in the prior art did not address situations in which the driver may not be aware of the same and also missed the speed limit indications present on the road. Hence, transmission of the citation signals on a real-time basis, as claimed in Claim 1 of the '084 Patent, can make drivers aware of speeding, and induce drivers to take proper measures for the same, which increases the driver's safety as well as that of other motorists. It also permits the driver to inform the associated technical partner (e.g., a vehicle service provider) about the fault if the speeding is due to break failure or any other technical issues." FAC, ¶ 24.

As argued herein, the additional factual allegations of the FAC, particularly those relating to the "generating a citation signal" and "attempting to transmit the citation signal" limitations, which must be taken as true at this stage, preclude resolution of Section 101 on the pleadings.

### B.     The '084 Patent is Not Directed to an Abstract Idea at Step One

Conduent renews its argument that Claim 1 of the '084 Patent is directed to an abstract idea, committing the cardinal sin of patent-eligibility analysis at Step One—oversimplifying the claim. The Federal Circuit has "cautioned that courts must be careful to avoid oversimplifying the claims by looking at them generally and failing to account for the specific requirements of the claims." *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1313 (Fed. Cir. 2016).

Conduent's argument that the '084 Patent merely "collects information," "analyzes it" and "displays results" is inaccurate and fails to account for the specific requirements of Claim 1. Dkt. No. 33 at 6. Completely absent from this description are the steps of "generating a citation signal when the speed of the first vehicle exceeds a predetermined speed" and "attempting to transmit the citation signal to a device of a person associated with the vehicle," in Claim 1 of the '084 Patent. Neither of these are steps that "merely mechanizes concepts capable of resolution by the human brain." Dkt. No. 33 at 6.

Notably, here as in *McRo*, "Defendant[] [has] provided no evidence that the process previously used…is the same as the process required by the claims." *McRO, Inc. v. Bandai Namco Games Am. Inc.,* 837 F.3d 1299, 1314 (Fed. Cir. 2016). Thus, neither Conduent, nor this Court, has any basis for concluding that the claimed method is the same as, or merely a mechanization of, a process performed by human beings, or that the steps of "generating a citation signal" or "attempting to transmit the citation signal" are capable of being performed by the human mind. It would be improper to draw such an inference based on judicial notice. *See Intellectual Ventures II LLC,*, 2017 WL 6002762, at *2 n. 1. "Automation of a manual process may not be an abstract idea if the automated process differs from the manual process and provides a specific means or method that improves the relevant technology." People.ai, Inc., 2023 WL 2820794, at *8 (Fed. Cir. Apr. 7, 2023). Here, Conduent offers no evidence that Claim 1 is equivalent to "manual process" for infraction detection. For example, the '084 Patent explains how the claimed step of "determining a speed of the first vehicle" proceeds:

> One embodiment is a system for determining a speeding violation by a vehicle. In this embodiment, the onboard navigation system **260** can be a system in the police officer's vehicle that receives the citation signal from the host server **210**. **A first image capture device 230 has a first processor 240 to perform an image recognition algorithm to detect a vehicle in a first image captured by the first image capture device 230. A second capture device 230 has a second processor 240 to perform an image recognition algorithm to detect the vehicle in a second image captured by the second image capture device 230. The time of image capture can be communicated to a central processor 210 that computes a speed of a vehicle using traffic flow computation**

7

> **software 270, based on the times of first and second image capture and a known distance between the first and second image capture devices.** The traffic flow data store **250** can be used to store speed limit data such that a comparison can be made by the server **210** between calculated vehicle speed and the speed limit between the image acquisition systems **230** acquiring the imagery.

'084 Patent, 5:30-48 (emphasis added). This is completely different from the "conventional" method whereby "a police officer detecting a speeding motorist waits at the side of the road." '084 Patent, 2:7-8. As alleged in the FAC, "[u]sing image-based devices to capture the image of the vehicle also provides a distinct advantage over the prior system of using radar detection." FAC, ¶ 16.

The '084 Patent "does not clearly say that humans had been doing that for years in just the same way that the invention does it." *Ficep Corp. v. Peddinghaus Corp.*, No. CV 19-1994-RGA, 2021 WL 254104, at *9 (D. Del. Jan. 26, 2021), *report and recommendation adopted*, No. 19-CV-1994-RGA, 2021 WL 979564 (D. Del. Mar. 16, 2021); *Jaguar Land Rover Ltd. v. Bentley Motors Ltd.*, 388 F. Supp. 3d 665, 680 (E.D. Va. 2019) ("the Court notes that it is not clear that people could do what the patent claims to do. Although Defendants provide the example of driving slower downhill or applying the brakes in a different manner, drivers are generally not able to change the wheel spin of their vehicles or change the suspension while the vehicle is moving. Therefore, unlike tabulating a vote or performing basic economic principles, the technology here is more than mere computerization of functions that people can already do.") As such, there is simply no evidentiary basis for concluding that the method of Claim 1 is somehow equivalent to a "manual process" or even to the method of "radar detection" used in the prior art. FAC, ¶ 16.

Rather, as is clear from the specification, the claimed step of "determining the speed of a first vehicle" is performed according to a specific technical process. "The claimed process uses…specific rules that renders information into a specific format"—here a "citation signal" that is "generated…when the speed of the first vehicle exceeds a predetermined speed." The "citation

8

signal" " is then used and applied to create desired results." *McRO*, 837 F.3d at 1315 (finding claim eligible at Step One).

"In another aspect of the invention, 'image recognition is performed by a processor at an image capture device. Alternatively, the images captured by image capture devices may be transmitted to a central processor that performs image recognition on the various images captured by the image capture devices. Image recognition may be achieved by applying an image recognition algorithm to a first image to produce a first result, applying the image recognition algorithm to a second image to produce a second result, and by comparing the first and second results to determine if the same vehicle is in both images. The central processor may also compute a speed of a vehicle and generate a citation signal when the speed of the vehicle exceeds a speed limit. The citation signal may be a data signal that includes the speed of the vehicle and/or the difference between the vehicle speed and the posted speed limit. The image recognition algorithm may further detect a license tag or VIN of a vehicle and a make and model of a vehicle." FAC, ¶ 15 (quoting '084 Patent, 5:53-6:2).

The importance of the "generating a citation signal" limitation to the eligibility analysis here is highlighted by analogous cases. For example, in *Fitbit*, the court analyzed the following claim limitation:

> **causing the heart rate sensor to stop collecting heart rate data when a heart rate reading of a predetermined level of heart rate data quality is obtained** without requiring further user-gestures in addition to the single user-gesture.

*Fitbit Inc. v. AliphCom*, No. 16-CV-00118-BLF, 2017 WL 819235, at *4 (N.D. Cal. Mar. 2, 2017).

The court concluded that the "predetermined level of heart rate data quality halting condition," took the "focus of the claims out of a more results-oriented realm of minimizing user interaction in heart rate data collection to specifically claim a way of doing this: using a single-user gesture and ***an automatic, data quality-driven stopping condition***." *Id*. at *21 (emphasis

9

added). Here, the limitation of Claim 1 is: "generating a citation signal **_when the speed of the first vehicle exceeds a predetermined speed_**." Just as the heart rate sensor in *Fitbit* stops when a heart rate reading of a predetermined level of heart rate data qualify is obtained, here Claim 1 generates a "citation signal when the speed of the first vehicle exceeds a predetermined speed." These very similar limitations are patent-eligible and tethered to specific methods—particularly in light of the "determining a speed" limitation which employs a specific computation and which is precedent to the "generating a citation signal" limitation of the '084 Patent. *Id*.

Accordingly, there is no basis for concluding that Claim 1 of the '084 Patent is directed to an abstract concept. At a minimum, there is no evidence that the method of Claim 1 is somehow equivalent to a "manual process" of infraction detection, and questions of fact would preclude such a determination. *Jaguar*, 388 F. Supp. 3d at 680.

      C.      **The '084 Patent Claims an Inventive Concept at Step Two**

Conduent continues to rely on *Elec. Power* in support of its Step Two argument. However, the Federal Circuit in *Elec. Power* expressly distinguished between patents—like the '084 Patent—that "arguably require an inventive set of components or methods, such as measurement devices or techniques, **_that would generate new data_**." *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1355 (Fed. Cir. 2016) (emphasis added). Here, the FAC specifically alleges that the claimed step of "generating a citation signal" involves the generation of "new data" and is patent-eligible under Section 101.

As the FAC alleges, "[g]enerating and transmitting a citation signal, as claimed in Claim 1 of the '084 Patent, was not even known in the prior art, much less well-understood, routine, and conventional." FAC, ¶ 19. "These inventive concepts are captured in the 'generating a citation signal when the speed of the first vehicle exceeds a predetermined speed' and 'attempting to transmit the citation signal to a device of a person associated with the vehicle' steps of Claim 1 of the '084 Patent, both individually and in combination." *Id*., ¶20.

In this regard, this case resembles *Aatrix*, where the Federal Circuit held that the patentee's "allegations at a minimum raise factual disputes underlying the § 101 analysis, such as whether the claim term 'data file' constitutes an inventive concept, alone or in combination with other elements, sufficient to survive an *Alice*/*Mayo* analysis at the Rule 12(b)(6) stage." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1126 (Fed. Cir. 2018). Much like the allegations regarding the claimed "data file" in *Aatrix*, Contiguity has made specific allegations that "generating a citation signal" and "attempting to transmit the citation signal" limitations of Claim 1 of the '084 Patent are inventive concepts and were not well-understood, routine, or conventional at the time of invention.

Conduent seizes on dicta in an attempt to distinguish "novelty" from the emphatically factual question whether a claim limitation is well-understood, routine, and conventional at Step Two of the Section 101 analysis. However, as the Federal Circuit pointed out in *Berkheimer*, "the Supreme Court recognized that in making the § 101 determination, the inquiry 'might sometimes overlap' with other fact-intensive inquiries like novelty under § 102." *Berkheimer*, 881 F.3d at 1368 (quotation omitted). Leaving aside Conduent's attempts to muddy the waters of Step Two analysis, the Federal Circuit in *Berkheimer* was clear: "[w]hether something is well-understood, routine, and conventional to a skilled artisan at the time of the patent is a factual determination. Whether a particular technology is well-understood, routine, and conventional goes beyond what was simply known in the prior art. The mere fact that something is disclosed in a piece of prior art, for example, does not mean it was well-understood, routine, and conventional." *Id.*

Here, the FAC alleges (relying in part on the prosecution history of the '084 Patent),[1] that the "generating a citation signal" and "attempting to transmit the citation signal" limitations of Claim 1 of the '084 Patent are inventive concepts and were not well-understood, routine, or

---

[1] Conduent complains that the prosecution history is not before the Court, but the Court is entitled to take judicial notice of the prosecution history of the '084 Patent. *See, e.g., Wi-LAN Inc. v. LG Elecs., Inc.*, 382 F. Supp. 3d 1012, 1028 (S.D. Cal. 2019).

conventional at the time of invention. Conduent has provided no basis for the Court to hold otherwise, at this stage.

Conduent also argues that if the claimed method runs on "conventional or generic" hardware, that somehow leads to a *per se* finding of ineligibility under Section 101. Dkt. No. 33 at 7-8. However, the Federal Circuit has rejected this proposition, stating that "we are not persuaded that the invention's ability to run on a general-purpose computer dooms the claims." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1338 (Fed. Cir. 2016). Indeed, the Federal Circuit held in *BASCOM Global Internet Services, Inc. v. AT&T Mobility LLC* 827 F.3d 1341, 1350 (Fed. Cir. 2016) that "an inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces." For example, the FAC specifically alleges that "[u]sing image-based devices to capture the image of the vehicle also provides a distinct advantage over the prior system of using radar detection. The images captured by such devices provided records that could be used by law enforcement. By contrast, the radar systems conventionally used in the prior art did not have such an advantage." FAC, ¶ 16. While image-based devices were known, there is no evidence that their use here was somehow "conventional," and the FAC alleges otherwise.

Accordingly, because the FAC has sufficiently alleged that the "generating a citation signal" and "attempting to transmit the citation signal" limitations of Claim 1 of the '084 Patent are inventive concepts and were not well-understood, routine, or conventional at the time of invention, the Court must deny Conduent's Motion to Dismiss. *See Transp. Techs*, 2016 WL 7444679, at *6 (rejecting eligibility challenge to patent "for traffic monitoring and for the automatic identification of a vehicle as it passes through a toll gate" at the pleading stage and noting that "the Court must construe the patent claims in a manner most favorable to Plaintiff").

### D. Claim Construction Issues Preclude Resolution of Section 101 Eligibility At the Pleading Stage

The "determining a speed of the first vehicle" limitation of Claim 1, properly construed, contain details that render Claim 1 patent-eligible under Section 101.

For example, as indicated above, the '084 Patent explains that the claimed method of "determining a speed of the first vehicle" proceeds as follows:

> "a first image capture device 230 has a first processor 240 to perform an image recognition algorithm to detect a vehicle in a first image captured by the first image capture device 230. A second capture device 230 has a second processor 240 to perform an image recognition algorithm to detect the vehicle in a second image captured by the second image capture device 230. The time of image capture can be communicated to a central processor 210 that computes a speed of a vehicle using traffic flow computation software 270, **based on the times of first and second image capture and a known distance between the first and second image capture devices**.

'084 Patent, 5:30-48 (emphasis added). Thus, the "determining a speed of the first vehicle" involves a computation based on the times of the first and second image captures and the distance between them.

Conduent parrots the Court's Order, which held that the "mathematical equation" employed by Claim 1 was abstract and not sufficient to render the claim eligible. Dkt. No. 27 at 8-10. Respectfully, however, this was the very argument rejected in *McRo*, where defendants "argue[d] the claims remain directed to an abstract idea because they only require using mathematical algorithms to manipulate existing information to generate additional information." *McRo*, 837 F.3d at 1310. But in *McRo*, as here, the "incorporation of the claimed rules…improved the existing technological process by allowing the automation of further tasks." *Id*. at 1315. Here, again as in *McRo*, conventional methods of traffic infraction detection were "driven by subjective determinations" of police offers "rather than [by] specific, limited mathematical rules." *Id*. Thus, this case is "unlike *Flook*, *Bilski*, and *Alice*, where the claimed computer-automated process and the prior method were carried out in the same way." *Id*. at 1315. Notably, there is no requirement that a mathematical computation be complex or a point of novelty, and the Arrhenius equation that rendered the claim a specific, patent-eligible application in *Diehr* was—as *McRo* recognized— itself well-known.

13

The details claimed by the "determining a speed" limitation are important for another reason. In *Ficep*, the court noted that the claim language viewed superficially "does not say very much about *how* the programmable logic controller in claim 7 actually identifies intersection parameters" and "[h]ad the claim included more particularized language about that 'how,' it might have made the Motion less of a close call." *Ficep Corp. v. Peddinghaus Corp.*, No. CV 19-1994-RGA, 2021 WL 254104, at *8 (D. Del. Jan. 26, 2021), report and recommendation adopted, No. 19-CV-1994-RGA, 2021 WL 979564 (D. Del. Mar. 16, 2021). But the *Ficep* court properly concluded that this simply indicates that claim construction might be needed before a final call can be made on this Section 101 issue, since the "Section 101 calculus could turn on exactly what the claim…requires, and, from there, on how that process differs (if at all) from how a human calculated those parameters manually in working with prior art systems and processes." *Id*.

Here, when the "determining a speed" limitation is properly construed, it removes Claim 1 from the realm of abstractness, distinguishes the claimed method from a purportedly "manual process," and makes clear that the '084 Patent is eligible under Section 101.

### E.  Contiguity Has Plausibly Pleaded Infringement

Contiguity submits that it has alleged facts to support its claims for infringement of the '084 patent, as made clear in the claim chart attached to its Complaint. In them, Contiguity maps the claims in the '084 Patent to the website describing the Conduent DriveSafe Enforcement System. Conduent then argues against infringement, based on its construction of the terms in the claims and its unsupported characterization of the support found in the material linked in the claim charts.

However, contrary to Conduent's assertions, Contiguity *does* map every specific claim element to Conduent's system. The allegations are not conclusory. Instead, the claim charts point to specific documentation that explains how the Conduent's system infringes each claim. See, e.g., Ex. B to Plaintiff's FAC, at pp. 2-6 re the '084 patent. Courts have found complaints sufficiently

14

pleaded in circumstances similar to this one. For example, in *Disc Disease Solutions Inc. v. VGH Solutions, Inc.* 888 F.3d 1256 (2018)**,** the Federal Circuit held that a complaint sufficiently pleaded direct infringement of claims directed to a spinal brace by "specifically identif[ying] the three accused products—by name and by attaching photos of the product packaging as exhibits—and alleg[ing] that the accused products meet 'each and every element of at least one claim." That is the same pleading method Plaintiff Contiguity employed here. Further, it is worth noting that the patent at issue here contains even fewer independent claims than the patent at issue in *Disc Disease*: the *Disc Disease* patent contained four independent claims, whereas the '084 patent contains three independent claims.  Similarly, in *Repairify, Inc. v. Keystone Auto. Indus., Inc.,* No. W-21-CV-00819-ADA, 2022 WL 2479930, at *4 (W.D. Tex. July 6, 2022), this Court found sufficient a complaint alleging patent infringement where the "Complaint provided images and descriptions of the elements of the claims" more than met the pleading standard.

      Conduent argues that Contiguity's had not adequately alleged infringement because its infringement claim somehow rests on an implausible claim construction. But the Federal Circuit has noted that, where a motion dismiss hinges on claim construction, "[i]t is not appropriate to resolve these disputes…on a Rule 12(b)(6) motion, without the benefit of claim construction." *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1350 (Fed. Cir. 2018). Contiguity need not "prove its case at the pleading stage…especially as the Federal Rules of Civil Procedure do not require a plaintiff to plead facts establishing that each element of an asserted claim is met." *Id.* at 1347; *see also United Servs. Auto. Ass'n v. PNC Bank N.A.*, No. 2:21-CV-00246-JRG, 2022 WL 739521, at *3 (E.D. Tex. Jan. 14, 2022) (rejecting non-infringement argument at the pleading stage as improperly raising issues of fact).

      Accordingly, Contiguity's Motion must be denied.  At a minimum, any dismissal should be made without prejudice, consistent with "the Court's usual practice" allowing a patentee the opportunity "to amend its Complaint after the start of fact discovery to include pre-suit indirect and willful infringement claims, if it is able to elicit sufficient facts to support such allegations." *USC IP P'ship, L.P.*, 2021 WL 3134260, at *2.

### III. CONCLUSION

Accordingly, Contiguity requests that Conduent's Motion be DENIED in its entirety. Alternatively, if the Court is inclined to grant Conduent's Motion in any respect, Contiguity would ask that any such dismissal be *without* prejudice and with leave to amend.

Respectfully Submitted

**Ramey LLP**

*/s/ William P. Ramey, III*
William P. Ramey, III
Texas Bar No. 24027643
5020 Montrose Blvd., Suite 800
Houston, Texas 77006
(713) 426-3923 (telephone)
(832) 900-4941 (fax)
wramey@rameyfirm.com

***Attorneys for Contiguity, LLC***

### CERTIFICATE OF SERVICE

Pursuant to the Federal Rules of Civil Procedure and LR5, I hereby certify that all counsel of record who have appeared in this case are being served on this day of July 24, 2023, with a copy of the foregoing via email.

*/s/ William P. Ramey, III*
William P. Ramey, III