**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

|  |  |
|---|---|
| **CONTIGUITY, LLC**, | |
| Plaintiff, | Civil Action No. 6:23-cv-00038 |
| v. | **Jury Trial Demanded** |
| **CONDUENT BUSINESS SERVICES, LLC,** | |
| Defendant. | |

**REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**
**PLAINTIFF'S FIRST AMENDED COMPLAINT**

# TABLE OF CONTENTS

I.   INTRODUCTION ........................................................................................................ 1

II.  ARGUMENT ............................................................................................................... 1

    A.   The '084 Patent Claims Are Directed To Ineligible Subject Matter ..................... 1

        1.   The '084 Patent Claims Merely Recite An Abstract Idea........................... 1

            a)   The '084 Patent claims merely automates a manual process
                 that is conventionally performed by police officers ...................... 1

            b)   The '084 Patent claims are directed to collecting, analyzing,
                 and displaying information ............................................................. 3

        2.   The Claims Fail to Recite An Inventive Concept, And Thus, Fail Step
             Two Of The *Mayo/Alice* Test .................................................................. 3

            a)   The FAC alleges the asserted claims are novel, but novelty is
                 irrelevant under 35 U.S.C. § 101 ................................................... 3

            b)   Contiguity fails to cite to any allegations that the claimed
                 method was not well-understood, routine, or conventional........... 4

    B.   The FAC Does Not Plead Any Factual Allegations That, Taken As True,
         Prevent Resolving The Eligibility Question As A Matter Of Law ....................... 8

    C.   Contiguity Has Not Identified Any Disputed Claim Terms That Would
         Prohibit This Court From Resolving This Motion Under § 101........................... 8

    D.   Contiguity's Infringement Allegations Should Be Dismissed.............................. 9

    E.   There is No Basis To Allege Pre-Suit Knowledge Of The '084 Patent............... 10

    F.   The Court Should Not Grant Contiguity Leave To Amend Its Complaint
         Again.................................................................................................................. 10

III. CONCLUSION.......................................................................................................... 10

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Aatrix Software v. Green Shades Software, Inc.*,
  882 F.3d 1121 (Fed. Cir. 2018)..............................................................................4

*Addiction & Detoxification Inst. L.L.C. v. Carpenter*,
  620 F. App'x 934 (Fed. Cir. 2015) .......................................................................10

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
  573 U.S. 208 (2014)......................................................................................1, 3, 7

*Bot M8 LLC v. Sony Corp. of Am.*,
  4 F.4th 1342 (Fed. Cir. 2021) ...............................................................................10

*Castlemorton Wireless, LLC v. Bose Corp.*,
  No. 6:20-CV-00029-ADA, 2020 WL 6578418 (W.D. Tex. July 22, 2020) ...........10

*Cellspin Soft, Inc. v. Fitbit, Inc.*,
  927 F.3d 1306 (Fed. Cir. 2019)..............................................................................8

*ChargePoint, Inc. v. SemaConnect, Inc.*,
  920 F.3d 759 (Fed. Cir. 2019)...............................................................................10

*Elec. Power Grp., LLC v. Alstom S.A.*,
  830 F.3d 1350 (Fed. Cir. 2016).........................................................................3, 7

*IPA Techs., Inc., v. Amazon.com, Inc.*,
  352 F. Supp. 3d 335 (D. Del. 2019).......................................................................7

*Mayo Collaborative Servs. v. Prometheus Labs, Inc.*,
  566 U.S. 66 (2012)..................................................................................................1

*McRO, Inc. v. Bandai Namco Games Am. Inc.*,
  837 F.3d 1299 (Fed. Cir. 2016).................................................................2, 3, 8, 9

*People.ai, Inc. v. Clari Inc.*,
  Nos. 2022-1364, 2023 WL 2820794 (Fed. Cir. Apr. 7, 2023).......................2, 5, 6

*SAP Am., Inc. v. InvestPic, LLC*,
  898 F.3d 1161 (Fed. Cir. 2018)..............................................................................4

*Specialized Monitoring Solutions, LLC v. ADT LLC*,
  367 F.Supp.3d 575 (E.D. Tex. 2019)......................................................................4

*Synopsys, Inc. v. Mentor Graphics Corp.*,
    839 F.3d 1138 (Fed. Cir. 2016)........................................................................4

*Thompson v. TCT Mobile, Inc.*,
    No.19-899-RGA-SRF, 2020 WL 1531333 (D. Del. Mar. 31, 2020)...................8, 10

*Trading Techs. Int'l, Inc. v. IBG LLC*,
    921 F.3d 1084 (Fed. Cir. 2019)........................................................................3

**Statutes**

35 U.S.C. § 101.................................................................................................4, 5, 8

**Other Authorities**

Rule 12(b)(6)...........................................................................................................4

## I.      INTRODUCTION

In its Opposition (Dkt. 38) to Conduent Business Services, LLC's ("Conduent") Motion to Dismiss ("Motion"; Dkt. 34), Contiguity, LLC ("Contiguity") asserts the same conclusory statements and irrelevant allegations as in its first Opposition (Dkt. 10) (albeit with regard to its First Amended Complaint ("FAC"; Dkt. 31)). This Court should again reject these arguments.

Furthermore, Contiguity's FAC fails to alleged sufficient facts to support its claims for infringement and fails to include factual allegations regarding Conduent's pre-suit knowledge.

## II.     ARGUMENT

### A.   The '084 Patent Claims Are Directed To Ineligible Subject Matter

#### 1.      The '084 Patent Claims Merely Recite An Abstract Idea

At step one, the court must determine whether the claims are directed to a patent-ineligible abstract idea. *Mayo Collaborative Servs. v. Prometheus Labs, Inc.*, 566 U.S. 66, 76 (2012); *see also Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208 (2014). Even considering as true the additional statements in the FAC, the claims of the '084 Patent are merely directed to the use of computers and cameras to automate the commonplace activity, ticketing speeding motorists. This "automated" method merely recites the functional steps of collecting information, analyzing it, and displaying certain results of the collection and analysis, and is directed to an abstract idea.

a)      The '084 Patent claims merely automates a manual process that is conventionally performed by police officers

Contiguity admits that "conventionally, a police officer detecting a speeding motorist waits at the side of the road in a traffic flow area to detect the speed of the vehicle and must then enter the flow of traffic to signal the drive of the speeding vehicle to pull over . . ." Dkt. 38 at 4; Dkt. 31 ¶ 12 (quoting '084 Patent, 2:6–12). Contiguity also admits that "when a speed of a vehicle exceeds a speed limit, a citation signal is generated, and the vehicle owner may be [] cited for speeding."

Dkt. 38 at 4; Dkt. 31 ¶ 13 (Dkt. 31-1 3:27–29). The '084 Patent merely automates the manual process for ticketing motorists, which Contiguity admits, but it argues that the claimed automated method is patent eligible under *Alice/Mayo* step one because the automated method of ticketing speeding motorists is not "equivalent" to the conventional method. Dkt. 38 at 6–10.

Contiguity argues that "[a]utomation of a manual process may not be an abstract idea if the automated process ***differs from the manual process*** and provides a specific means or method that ***improves the relevant technology***." Dkt. 38 at 7 (citing *People.ai, Inc. v. Clari Inc.*, Nos. 2022-1364, 2023 WL 2820794, at *8 (Fed. Cir. Apr. 7, 2023)) (emphasis added). This is not the case here. The claimed method does not "differ from the manual process," aside from the automation, and Contiguity has never argued that the automated method "improves the relevant technology." Indeed, the steps of the claimed automated method are necessarily equivalent to a police officer who identifies a vehicle, determines its using radar, confirms the vehicle is exceeding the speed limit, and pulls the vehicle over, writes the ticket, and issues the citation to the driver. *See* Dkt. 38 at 4–5, 8, 12; Dkt. 31 ¶¶ 12, 16, 21–22.

Contiguity argues that the steps of "generating a citation signal" or "attempting to transmit the citation signal" are not capable of being performed by the human mind, but fails to provide an explanation as to why they are not "the same process," just performed by a human. Dkt. 38 at 7. Contiguity also asserts that "using image-based devices to capture the image of the vehicle also provides a distinct advantage over the prior system of using radar detection." Dkt. 38 at 5, 8, 12; Dkt. 31 ¶ 16. However, the Federal Circuit has explained that the fact that "the claimed automation leads to expected improvements in speed, accuracy, and completeness is laudable, but . . . the inherent benefits of automation 'do not render it any less abstract.'" *People.ai*, 2023 WL 2820794 at *8. The Asserted Claims are unlike those in *McRO, Inc. v. Bandai Namco Games Am. Inc.*,

because the automated method does not provide a "method that improves the relevant technology [but] instead [is] directed to a result or effect that itself is the abstract idea and merely invoke generic processes and machinery." 837 F.3d 1299, 1314–15 (Fed. Cir. 2016).

    b)  <u>The '084 Patent claims are directed to collecting, analyzing, and displaying information</u>

   The Federal Circuit has explained that claims directed to "collecting information, analyzing it, and displaying certain results of the collection and analysis" and "fall into a familiar class of claims 'directed to' a patent-ineligible concept." *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1352 (Fed. Cir. 2016). Like the claims in *Elec. Power*, this Court determined that "the '084 system collects information (images of a vehicle), analyzes it (compares two images to calculate speed), and displays results (whether or not the vehicle exceeded the speed limit)." Order at 7.

   Contiguity's FAC confirms that the Court got it right. The FAC explains that "the images ***captured*** by image capture devices may be ***transmitted*** to a central processor . . . to ***determine*** if the same vehicle is in both images . . . [then] ***compute[s] a speed of a vehicle*** and ***generate[s] a citation*** signal when the speed [] exceeds a speed limit." Dkt. 31 ¶ 15 (emphasis added).

   Thus, the claims are directed to the automated method of determining speed and ticketing speeding motorists. The character of the claims as a whole are directed to excluded subject matter under step one. *Trading Techs. Int'l, Inc. v. IBG LLC*, 921 F.3d 1084, 1092 (Fed. Cir. 2019).

    **2.**  **The Claims Fail to Recite An Inventive Concept, And Thus, Fail Step Two Of The *Mayo/Alice* Test**

   The Supreme Court has described step two "as a search for an inventive concept—i.e., an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Alice*, 573 U.S. at 217–18. Contiguity's alleged inventive concepts do not save the '084 Patent at step two.

    a)  <u>The FAC alleges the asserted claims are novel, but novelty is</u>

<u>irrelevant under 35 U.S.C. § 101</u>

Contiguity argues that "the claimed step of 'generating a citation signal' involves the generation of 'new data' and is patent-eligible" because this step was "not even known in the prior art" Dkt. 38 at 10; Dkt 31 ¶ 19. Furthermore, Contiguity explains during prosecution of the '084 Patent, the applicant argued that the prior art did not disclose or suggest "generating a citation signal" and "attempting to transmit the citation signal." Dkt. 38 at 5; Dkt. 31 ¶ 18. However, the Supreme Court has been clear that "an abstract idea may be new, but nonetheless be unpatentable under section 101." *Specialized Monitoring Solutions, LLC v. ADT LLC*, 367 F.Supp.3d 575, 589 (E.D. Tex. 2019); *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1151 (Fed. Cir. 2016).

The FAC also states that "attempting to transmit the citation signal" was game-changing, but that is not enough for eligibility. *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1163 (Fed. Cir. 2018). Indeed, as before, if Contiguity's approach was correct, then *any* patent that issues over prior art is *per se* patent eligible; this is nonsensical.

Contiguity asserts that like *Aatrix Software v. Green Shades Software, Inc*., its "allegations at a minimum raise factual disputes underlying the § 101 analysis . . . sufficient to survive an *Alice/Mayo* analysis at the Rule 12(b)(6) stage." 882 F.3d 1121, 1126 (Fed. Cir. 2018). However, in *Aatrix Software*, the Federal Circuit explained that the amended complaint included allegations that the claims were directed to an improvement which used less memory, increase processing speed, and improved computer efficiency (i.e., an improvement in computer technology itself). *Id.* at 1127. Contiguity does not allege that the claimed steps are directed to an improvement in computer technology, but are simply novel. Dkt. 38 at 10–12; Dkt. 31 ¶¶ 18–19.

> b)   <u>Contiguity fails to cite to any allegations that the claimed method was not well-understood, routine, or conventional</u>

Contiguity alleges that the claimed automated method of ticking speeding motorists was

not well-understood, routine, or conventional at the time of the invention or recites an inventive concept. Dkt. 38 at 4–5. But a review of these "allegations" reveals that they are either not pertinent to the invalidity conclusion or are insufficient to render the claims patentable under § 101.

For example, Contiguity alleges that "[d]atabasing vehicles and then matching them in order to send a notice to the law enforcement authorities" was not well-understood, routine or conventional at the time of invention. Dkt. 38 at 2, 4; Dkt. 31 ¶ 16. In addition, Contiguity alleges that "[u]sing image-based devices to capture the image of the vehicle also provides a distinct advantage over the prior system of using radar detection [because t]he images captured by such devices provided records that could be used by law enforcement." Dkt. 38 at 5, 8, 12; Dkt. 31 ¶ 16. Furthermore, Contiguity asserts that the claimed method "also permits the driver to inform the associated technical partner (e.g., a vehicle service provider) about the fault if the speeding is due to break failure or any other technical issues." Dkt. 38 at 6; Dkt. 31 ¶ 24.

Even if these allegations were taken as true, it does not render the claims patent eligible under *Alice/Mayo* step two because the allegations are not "tethered to the asserted claims." *People.ai*, 2023 WL 2820794 at *10. Claims 1 and 4 do not recite databasing vehicles, matching to the databased vehicles, sending a notice to authorities, informing an associated technical provider about various conditions, or utilizing the captured images as records for law enforcement.

Contiguity also alleges that the claimed method provides advantages or improvements over the prior art or conventional methods, alleging that the claimed automated method is "more efficient and less error-prone than conventional methods relied upon in the prior art, which relied on 'personal observation'" and "allowed for more accurate citation of speeding violations." Dkt. 38 at 5; Dkt. 31 ¶ 21. But even if these allegations are taken as true, they are simply due to the automation of the manual process itself and therefore do not render the Asserted Claims any less

abstract. *See People.ai*, 2023 WL 2820794 at *7 ("The '345 patent confirms that the claimed invention is directed to replacement of an already existing manual process of updating systems of record with an automated process, and the benefits of its claims are improvements to accuracy, speed, and efficiency—benefits inherent in automation.").

Furthermore Contiguity argues that the claimed automated method of ticketing speeding motorists "reduce[s the] danger to police officers and motorists, [because] it d[oes] not require a police officer to actually pull over the driver of a speeding vehicle before issuing a citation." Dkt. 38 at 5; Dkt. 31 ¶ 22. However, the Federal Circuit has held that "even though the automation might 'result in life altering consequences,' a 'laudable' outcome, that improvement 'does not render it any less abstract.'" *People.ai*, 2023 WL 2820794 at *7.

Contiguity's FAC also alleges that the claimed method "was a more precise system of notifying individuals (police or otherwise) of infractions…This is important in traffic situations where the offending party may claim that he was not driving the vehicle." Dkt. 38 at 6; Dkt. 31 ¶ 23. However, the only allegations that the FAC regarding conventional method of issuing infarctions to drivers include "a police officer detecting a speeding motorist waits at the side of the road in a traffic flow area to detect the speed of the vehicle and must then enter the flow of traffic to signal the drive of the speeding vehicle to pull over." Dkt. 38 at 4; Dkt. 31 ¶ 12. In this scenario, the officer would identify the driver at the scene, thus the offending party would not be able to claim that he was not driving the vehicle. Thus, it is not clear how this is "a more precise system." Contiguity also alleges that all the steps up through the issuance of a citation were known in the prior art (Dkt. 38 at 4-5, 8, 12; Dkt. 31 ¶¶ 12, 16, 21–22), so its allegations ring hollow.

Contiguity makes conclusory statements that the steps of "generating a citation signal" and "attempting to transmit the citation signal" "are inventive concepts and were not well-understood, routine, or conventional at the time of invention" but these are merely boilerplate allegations and

6

do not provide an explanation as to why these steps are "inventive concepts . . . both individually and in combination," aside from improperly arguing novelty. Dkt. 38 at 2, 11-12; Dkt. 31 ¶ 20. *See IPA Techs., Inc., v. Amazon.com, Inc.*, 352 F. Supp. 3d 335, 349 (D. Del. 2019).

Furthermore, the '084 Patent's alleged "improvement over the prior art" is merely the application of computers and cameras to automate the ticketing of speeding motorists, resulting in an "automated" method comprising the functional steps of collecting information, analyzing it, and displaying/presenting certain results. None of the claim elements transform the claim into patent eligible subject matter. *Alice*, 573 U.S. at 217 (internal quotations omitted). Simply appending conventional steps, specified at a high level of generality, is not enough to supply an "inventive concept." *Id.* at 222 (internal quotations omitted); *see also* Order at 9.

Furthermore, nothing in the FAC amounts to a factual allegation that claim 1 requires anything other than "off-the-shelf, conventional computer, network, and display technology for gathering, sending, and presenting the desired information." *Elec. Power*, 830 F.3d at 1355; Dkt. 31 ¶¶ 15–16. The use of generic computer technology and cameras, which was readily available at the time of the claimed invention, cannot amount to an "inventive concept" that could "transform a patent-ineligible abstract idea into a patent-eligible invention." *Alice*, 573 U.S. at 223.

Even if Contiguity's conclusory allegations regarding the use of cameras and computers for "automating" the method was a sufficient factual allegation, the combination of elements does not supply a sufficiently inventive concept. Importantly the Court has already explained that:

> [E]ven if Plaintiff is correct that it was the first to digitize detecting traffic infractions, ***without providing additional details of the unique collection methods—perhaps the camera, the means of reporting the data or the communication system—or algorithm,*** the claims merely embody an abstract concept.

Order at 9–10. Contiguity's FAC provides none of this. The claims of the '084 Patent do not recite any inventive concepts under step two of the *Alice/Mayo* framework.

**B.   The FAC Does Not Plead Any Factual Allegations That, Taken As True, Prevent Resolving The Eligibility Question As A Matter Of Law**

Contiguity's FAC merely consists of verbatim quotations taken from the declaration of the inventor, Mr. Leigh Rothschild, an interested, biased fact witness. Compare Dkt. 31-3 ¶¶ 8–22 with Dkt. 31 ¶¶ 10–24. Mr. Rothschild is not qualified as an expert (nor does Contiguity try to present him as such); he simply regurgitates passages from the specification and makes threadbare assertions using phrases from 35 U.S.C. § 101 to describe the purported invention of the '084 Patent. *See generally*, Dkt. 31-3; Dkt. 34 at 4. Contiguity seemingly agrees. Dkt. 38 at 1.

The Opposition confirms Conduent's assertions in its second Motion to Dismiss, that the FAC fails to add any new factual allegations and simply recites passages of the '084 Patent and makes boilerplate allegations and conclusory statements in an attempt to create sufficient facts that allege the '084 Patent claims are directed to patent eligible subject matter. *See Thompson v. TCT Mobile, Inc.*, No.19-899-RGA-SRF, 2020 WL 1531333, at *10 (D. Del. Mar. 31, 2020) (quoting *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1317 (Fed. Cir. 2019)).

**C.   Contiguity Has Not Identified Any Disputed Claim Terms That Would Prohibit This Court From Resolving This Motion Under § 101**

Contiguity alleges that "determining a speed of the first vehicle" involves performing a calculation "based on the times of the first and second image captures and the distance between them." *Id.* at 13. Notably, this is precisely how this Court described "determining a speed of the first vehicle." Order at 9 ("Claims 1 and 4 effectively digitize a mathematical equation (speed = distance ÷ time . . .")).

Contiguity suggests that the automation of the Asserted Claims are like the claims in *McRO*, but that is plainly false. 837 F.3d. The claims in *McRO* "focused on a specific asserted improvement in computer animation" and the Federal Circuit explained that "[i]t is the incorporation of the claimed rules, ***not the use of the computer***, that improved the existing

technological process . . ." *Id.* at 1314 (emphasis added). Unlike *McRO*, the '084 Patent Claims merely automate that which is traditionally performed by police. Contiguity fails to argue an officer would determine the vehicle speed in any other way, other than 'speed = distance ÷ time.'

Contiguity asserts that "as in *McRO*, conventional methods of traffic infraction detection were driven by subjective determinations of police offers *[sic]* rather than by specific, limited mathematical rules." Dkt. 38 at 13. However, there is nothing in the '084 Patent or in the FAC that suggests that conventional methods were driven by subjective determinations of police officers, as compared to, for example, the laser speed detectors anybody with a driver's license has been vigilant for decades. And there is nothing in the FAC or the '084 Patent that suggests there are any "specific, limited mathematical rules" involved in "determining a speed of the first vehicle." Contiguity is simply trying to make the Asserted Claims appear similar to those in *McRO*.

Contiguity's arguments make clear that there is no actual dispute as to how to construe the term "determining a speed of the first vehicle," and no claim construction is necessary. Contiguity is simply trying to avoid a repeat of this Court's previous ruling.

Furthermore, even if this Court adopted Contiguity's purported proposed construction, the result would still be the same, the claims are directed to an abstract idea, namely "a method to assess a vehicle's speed: Plaintiff's devices acquire images of a vehicle at two different points, identify the vehicle in both images as one and the same, determine the vehicle's speed using basic arithmetic, and then [] generate a citation [signal]." Order at 9.

### D.  Contiguity's Infringement Allegations Should Be Dismissed

The claims, considered in light of the specification, require two imaging devices, each at a separate location (i.e., a predetermined distance apart), allowing for the vehicle's speed to be calculated as it passes from one image to another across time. *Id.*; Dkt. 31-1 at Fig. 1. Contiguity again fails to address Conduent's assertions and merely makes conclusory statements. Dkt. 38 at

14–15. However, Contiguity itself agrees that the claimed method requires two cameras in two locations. *Id.* at 13 ('084 Patent, 5:30–48) (emphasis added); *see also id.* at 7–8. There is no dispute regarding claim construction at this stage. This Court can dismiss the direct and indirect infringement claims because "the factual allegations are actually inconsistent with and contradict infringement," since Contiguity's claim chart shows Conduent's product only has a single camera, at a single location, and uses radar to determine speed. *See Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1354 (Fed. Cir. 2021); *see also* Dkt. 31-2 at 3.

### E.    There is No Basis To Allege Pre-Suit Knowledge Of The '084 Patent

Like the original Complaint, the FAC fails to plead *any fact* to support the conclusion that Conduent was aware, pre-suit, of Contiguity's belief that any Conduent acts constituted patent infringement. *See* Dkt. 34 at 2, 19-20; Dkt. 7 at 7, 20–21. This Court should dismiss any pre-suit indirect infringement claims. *See Addiction & Detoxification Inst. L.L.C. v. Carpenter*, 620 F. App'x 934, 938 (Fed. Cir. 2015); *see also Castlemorton Wireless, LLC v. Bose Corp.*, No. 6:20-CV-00029-ADA, 2020 WL 6578418, at *5 (W.D. Tex. July 22, 2020).

### F.    The Court Should Not Grant Contiguity Leave To Amend Its Complaint Again

If the Court determines that Contiguity's attempt to resolve the patentability issues by amending its original Complaint have failed, further re-pleading on that point would be futile and Contiguity's request should be denied. *See Thompson*, 2020 WL 1531333, at *10; *see also ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 775 (Fed. Cir. 2019).

## III.    CONCLUSION

Conduent's second Motion to Dismiss should again be granted.

July 31, 2023                                  Respectfully submitted,

By: /s/ *Melissa R. Smith*
Melissa R. Smith (Texas Bar No. 24001351)
Gillam & Smith LLP
303 South Washington Avenue
Marshall, TX 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257
melissa@gillamsmithlaw.com

Benjamin E. Weed (admitted *pro hac vice*)
Melissa M. Haulcomb (admitted *pro hac vice*)
K&L GATES LLP
70 W. Madison St., Suite 3300
Chicago, IL 60602
Telephone: (312) 781-7166
Fax: (312) 827-8000
benjamin.weed@klgates.com
melissa.haulcomb@klgates.com

*Attorneys for Defendant Conduent Business Services, LLC.*

11

## **CERTIFICATE OF SERVICE**

I declare that on July 31, 2023 a copy of this document has been served by the Court's

CM/ECF system on all counsel of record who have made an appearance in this case and consented

to email service.

*/s/ Melissa R.  Smith*
Melissa R. Smith